TROTTER v. STATE.

Crim. 3902

Opinion delivered November 26, 1934.

*W. T. Pate, Jr., Robt. J. Brown, Jr.,* and *U. C. May,* for appellant.

*Walter L. Pope,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

BUTLER, J. The appellant, Rogers Trotter, was indicted, tried and convicted for the crime of accessory before the fact of murder in the first degree, and his punishment fixed at life imprisonment in the State penitentiary. The indictment in effect alleged that on the 10th day of June, 1933, he entered into a conspiracy with Ed Kleier and Bill Bailey to rob one J. D. Fowler who was then living in Booneville in the Southern District of Logan County, Arkansas; that, while acting in furtherance of this conspiracy and attempting to execute its purpose, Ed Kleier and Bill Bailey murdered Fowler by shooting him; that the said Rogers Trotter was not present when Fowler was murdered, but had advised, encouraged, abetted and assisted the said Kleier and Bailey in the commission of the murder.

In apt time the appellant filed a motion for change of venue in the manner and form prescribed by statute, the ground set up being "that the minds of the people of both the judicial districts of Logan County are so prejudiced against him that he cannot receive a fair and impartial trial in either district of said county." There were three affiants to the supporting affidavit who were examined in open court touching their credibility. I. W. Young, one of them, testified that he was familiar with the sentiment of the people in regard to the charge against Trotter, and that he did not believe that Trotter could receive a fair trial in the county; that there are twenty-four townships in the county, the most of which he had journeyed through on a mule buying trip and had heard the case discussed; that in the course of his business of buying and selling mules he dealt with people from all over the county, and based his opinion upon the discussions he had heard among these people. Another affiant, Jack Corley, was foreman of C. W. A. work and, as such, employed men from all over the

northern district of the county, and had talked with numbers of persons from the southern district. He testified that he worked a crew of 74 men at a time which was frequently changed and consisted of men from different parts of the county; that he heard these crews talking about the case and others also, and, from their conversations relative to it, he based his opinion that Trotter would not be able to secure a fair and impartial trial in the county because of the prejudice against him.

U. C. May was called in support of the motion and testified that he was one of the attorneys for the defendant, and as such had ascertained the condition of the minds of the people of Logan County with reference to Rogers Trotter; that he had inquired from each township except one and the minds of the inhabitants were made up one way or the other as to the guilt or innocence of Trotter.

The court overruled the motion, to which ruling timely objections and exceptions were saved.

Previous to the trial of the appellant, Kleier had been tried and convicted of the murder of Fowler which occurred shortly after dark on the evening of June 10, 1933. Fowler was a man eighty-five years of age, and no one lived with him except his housekeeper. On the evening he was killed he was sitting on his back porch which was screened with wire mesh. A man broke through this screen and commanded Fowler to put up his hands. As Fowler arose from his chair, the intruder fired two shots—one inflicting the fatal wound and the other going into the roof of the porch. The housekeeper, who was present, stated that another person besides the actual assailant stood on the outside.

There is no question raised as to the sufficiency of the evidence tending to show that Kleier was the actual murderer, and no contention is made on this appeal that Kleier did not commit the crime. The two grounds most strongly urged for reversal are: (1) error of the court in overruling the motion for change of venue, and (2) lack of sufficient evidence to support the jury's verdict.

We are of the opinion that the trial court should have granted the defendant a change of venue. The tes-

timony of the supporting witnesses to the motion discloses that they had unusual opportunity for discovering the sentiment of the people throughout the county with regard to the prejudice existing; that they had heard discussions of the case by people from practically every portion of the county, and on this they based their conclusion that defendant could not secure a fair and impartial trial in Logan County.

Many cases relating to this subject are cited in the recent case of *Adams* v. *State,* 179 Ark. 1047, 20 S. W. (2d) 130, cited by counsel for the appellee. In that case the settled rule is declared that this court will not overrule the judgment of a trial court in denying an application for change of venue unless it appears that the ruling of the lower court is such as to constitute the denial of a substantial right. That case refers to the examination of the supporting affiants and the purpose for the same—namely, to ascertain the means by which the condition of the minds of the inhabitants became known to the affiants, and the extent of the information so obtained. If it should appear that the opportunity for knowing, and the knowledge of the condition of the minds of the inhabitants was such as not to warrant the statements made in the affidavit, then the affiants would be deemed not to be credible persons within the meaning of the statute. In the instant case counsel urge that the examination shows the information of the affiants to be limited and obtained through limited sources. We do not so view their testimony, but, on the contrary, it appears as stated that the sources of information were wide, and that the conclusion of the affiants was accurate seems to us to be shown from the evidence upon which the verdict was based.

The evidence adduced by the State most strongly tending to support the verdict is collected in appellee's brief, the testimony of each witness being summarized. One witness, Jimmy O'Neal, who, the evidence conclusively proves, was mentally deficient, testified that he had been living in Trotter's home in Scott County for several days prior to the killing; that Trotter told him ''about a job about eighteen miles from where he lived;'' that

Kleier had also been living at Trotter's home for several days, and that on the morning after the killing witness saw Kleier in the barn changing his clothes and cleaning a gun in the garage, then going into the house where he shaved his mustache and trimmed his eyebrows; that besides the gun Kleier had a blackjack, flashlight, pair of gloves, a piece of rubber hose and two tire tools.

Frank Nichols and Mrs. James testified that on May 29 they saw Trotter in company with Kleier and Herman Mitchell (also charged with the crime of this murder) at Nichols' place of business in Scott County. Another witness, Barney Quinn, stated that about a week or ten days before Fowler was killed Trotter and Kleier came to field about a mile and a half from Fowler's home where Herman Mitchell was working. Harold Jones, another witness, stated that he saw a man he thought was Trotter in company with a man answering Kleier's description in the vicinity of Booneville on the day of the killing, but that he had not seen Trotter in two years and so was not positive. Another witness stated that he had seen Kleier in company with Trotter or Jimmy Walton, Trotter's son-in-law, several times, and that the day Fowler was killed Trotter drove into his filling station from the direction of Waldron in Scott County.

Allan Hart testified that he saw a car resembling the Chevrolet coupe owned by Trotter pass his place of business in the afternoon before the killing going in the direction of Booneville, and there appeared to be three persons in the car.

Dr. Ed Wineman, who lived in Booneville, a half mile from the Fowler home, testified that he heard one shot in the early part of the night and noticed a car passing; that after he went to bed—or about the time he was in the act of doing so—a car passed going at a terrific rate of speed west on West Thomas Street; that in going to Fowler's home one travels on West Thomas Street, turns south, then west; that the first time a car passed his house was before the shooting. It was after dark, but he observed that it had a bright radiator, the side lights were bright, and it had a rumble seat; that he was shown the car which had been taken in custody by

the officers, and it resembled the one he saw passing his house at a high rate of speed. Witness stated that a car passed his house afterwards four or five times.

In addition to this testimony there are these circumstances; it is in evidence that about two weeks before Fowler was killed Kleier and his wife, apparent strangers in that community, came to Trotter's home and remained until Kleier was arrested on the morning after Fowler was killed. From statements made by Jimmy O'Neal the officers suspected Kleier and early on the morning after the killing went to Trotter's home and asked Trotter to call Kleier to come outside. Kleier appeared in response to Trotter's call, was arrested and taken to jail. Among Kleier's belongings a pistol was discovered which he was supposed to have used in committing the murder. Shortly after Kleier's arrest, Trotter learned that he was suspected of some complicity in the guilt of Kleier and left the country, going from place to place for several months, but finally returned and surrendered to the officers. His friends in the meanwhile had made arrangement for his bond.

The inference justly deducible from the testimony quoted and the attendant circumstances proved, when given their greatest weight, falls short in probative value of that degree of evidence necessary to connect Trotter with the commission of the crime. O'Neal did not attempt to explain the nature of the job which Trotter wanted him to undertake, and the association of Trotter with Kleier and his movements during the days immediately preceding the killing and on that day do not reasonably establish more than a suspicion of Trotter's connivance with Kleier in his felonious purpose.

The judgment of the trial court is reversed, and the cause remanded with directions to grant the motion for change of venue, and for such further proceedings as may be deemed advisable.