GRIGSON AND GIBSON *v.* STATE.

4695                                        251 S. W. 2d 1021

Opinion delivered October 13, 1952.

Rehearing denied November 27, 1952.

*Ted Goldman,* for appellant.

*Ike Murry,* Attorney General and *George E. Lusk, Jr.,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. Appellants Grigson and Gibson, two white men, were jointly charged and tried for the homicide of Emma Williams. Both men were

convicted of second degree murder, and each filed his separate motion for new trial.

The evidence established that Emma Williams was a Negro woman, 75 or 80 years of age. She lived in one room of a two-room hovel, the other room being occupied by another Negro woman, with the door locked between the two rooms. There were no windows in Emma's room, and only a door to the outside provided light and air. Emma's room was dark and littered with trash and otherwise indescribably filthy. On the afternoon of *Monday, December 10,* 1951, Grigson and Gibson were drinking together and going from place to place in Gibson's truck. About eight o'clock that night, they parked the truck one-half block from Emma's room. The door of Emma's room remained open all day Tuesday, December 11th, but no one investigated. On the morning of *Wednesday, December 12,* inquiring persons found Emma's body in her room. She had been severely beaten, and medical evidence established that her death resulted from the beating. The State insisted that Gibson and Grigson went to Emma's room Monday night and killed her.

I. *The Case Against Gibson.* It is clearly shown that he went to Emma's room Monday night and left it early Tuesday morning, with only a coat around him. Most of his clothes, and some of them bloody, were later found in Emma's room. He admitted leaving Emma's room Tuesday morning in a semi-nude condition, and admitted that he saw her body in the room before he left. All these facts, with others in the record, clearly made a jury question as to Gibson's guilt. His defense of intoxication and mental "blackout" were matters for the jury.

The Court told the jury that if it found the defendant guilty, and could not agree on the punishment, then the Court would fix the punishment. This instruction was correct. See *Underwood* v. *State,* 205 Ark. 864, 171 S. W. 2d 304; *Knighten* v. *State,* 210 Ark. 248, 195 S. W. 2d 47. We have carefully examined all of the twelve assignments in Gibson's motion for new trial, and find them without merit, so Gibson's conviction is **affirmed.**

II. *The Case Against Grigson.* Grigson has nineteen assignments in his motion for new trial, and many of them are different from those contained in Gibson's motion, but we find it necessary on this appeal to consider only the assignments relating to the sufficiency of the evidence to take the case to the jury as against Grigson. He did not testify in the Circuit Court. Those who heard his testimony in the examining court told the trial jury of his statements in the examining Court. Here is Officer Tackett's testimony as to what Grigson said in the examining court:

"Mr. Grigson said that they first went to Red's house and called him but he couldn't get in; that they went then down to Emma Williams' house and that Gibson went inside and that he went down and bought a bottle of wine and then he. brought this bottle of wine back and gave it to Gibson and that he went back and bought a second bottle of wine and came back and gave that to Gibson and upon one of these trips he went to a restaurant in Sand Flat and got two sandwiches. I believe he said that he got there at Emma Williams' house at about eight-thirty and that he left in the early part of the night, some time around eleven o'clock. I don't believe Mr. Grigson ever stated he went inside the house at any time. 'Q. Now do you recall if he testified who was there at the time he said he left at Emma Williams' house? A. Mr. Gibson and Emma Williams.' "

No witness testified that Grigson ever entered Emma Williams' room. His witnesses testified that he reached his home not later than 11:30 Monday night, and his movements from then until the time of his arrest were carefully detailed. Willie B. Ray, a witness for the State, testified that she lived less than twenty feet away from Emma's room, and that she heard screams from Emma's room about nine o'clock Monday night. This is the witness' testimony:

"It was about nine o'clock at night and then I went to bed and at eleven o'clock I heard screaming again, and I got up and went to the door and I asked 'Emma, is

anyone bothering you', and I didn't hear anything and I went back to bed and about twelve o'clock I heard the same noise and I asked was anyone bothering her and I didn't hear anything, and then I heard a voice—a man— say 'get up and put on your shoes, we may be in Kansas City for all we know', and then I heard vomiting and a woman groan and I went back to bed.''

The fact that Grigson reached home not later than 11:30 Monday night, was not denied by the State. The testimony of the State's witness, Willie B. Ray, was to the effect that Emma was alive and screaming at *midnight*, which was thirty minutes after Grigson was at home. The evidence, tending to show that Grigson ever entered Emma's room, was entirely circumstantial and mostly speculative.

In *Trotter* v. *State*, 189 Ark. 1117, 76 S. W. 2d 102, Kleir had killed a man. Trotter was indicted on the theory that he and Kleir had conspired to commit robbery and then Kleir committed murder in the act of robbery, and that Trotter was guilty, although not present at the time of the murder. Trotter was convicted and appealed to this Court. Judge BUTLER reviewed the evidence in detail and said it was not substantial. The conviction was reversed and the cause was remanded.

In *Johnson* v. *State*, 210 Ark. 881, 197 S. W. 2d 936, the defendant was convicted of first degree murder. On appeal, this Court reviewed the evidence at considerable length, and said:

''We conclude that the testimony adduced was not sufficient to establish the guilt of appellant with the certainty that the law requires in cases of this kind. We cannot say that the circumstances shown could not be reasonably explained except upon the hypothesis of appellant's guilt. . . . The judgment of the lower court is, therefore, reversed and the cause remanded for a new trial.''

In *Reed* v. *State*, 97 Ark. 156, 133 S. W. 604, the defendants were convicted of grand larceny and on appeal the sole question was sufficiency of the evidence to

sustain the conviction. Judge FRAUENTHAL, speaking for this Court, reviewed the evidence and held it insufficient, and said:

"It may be that these defendants are guilty of this crime, but, after a careful examination of all the evidence adduced upon the trial and after drawing from it every inference that is rightfully deducible therefrom, we do not think that it was sufficient to warrant the defendants' conviction of this crime. *France* v. *State*, 68 Ark. 529, 60 S. W. 236. It may be that on future trial additional evidence may be introduced showing their guilt. The evidence that was introduced upon the trial below we think too slight to justify a conviction."

In each of the three cases just cited, this Court reversed the conviction because of the insufficiency of the evidence, and remanded the case for a new trial. Under § 27-2144, the Supreme Court may make such disposition of a case "as it may in its discretion deem just . . .": so in some criminal cases, when this Court, from a study of the record, has concluded that the case has not been fully developed and that stronger evidence can be obtained on a new trial, this Court has remanded the case for such new trial, even though the sole ground of reversal was the insufficiency of the evidence. Such is the situation in the case at bar. It is admitted that there was a transcript of the defendant's testimony in the examining trial and it is stated that this transcript contained many damaging statements. Furthermore, the defendant in his brief, now asks us to give him the opportunity to testify. In view of these matters, we believe this case should be remanded for a new trial. The other assignments in the motion for new trial need not now be discussed, because, as to Grigson, the judgment is reversed and the cause remanded for a new trial.