## DOUGLASS *v.* STATE.

Opinion delivered November 4, 1912.

RAPE—ASSAULT WITH INTENT TO COMMIT—SUFFICIENCY OF EVIDENCE.—Proof that defendant took hold of the hand of a female and that he drew a pistol on her is insufficient to sustain a conviction of assault with intent to commit rape where it does not appear that either act was the beginning a part of the attempted crime with which he was charged.

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; reversed.

*Jackson & Jones, Bradshaw, Rhoton & Helm* and *A. M. Fulk,* for appellant.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

McCULLOCH, C. J. The defendant, Ensley Douglass, was indicted for the crime of assault with intent to commit rape upon Nina Carroll, a girl about sixteen years of age. The trial jury convicted him of the charge, and he was sentenced to the penitentiary for a term of ten years, and appeals from the judgment of conviction.

The offense is alleged to have been committed in the city of Little Rock on or about June 10, 1912, at night in the bedroom of Nina Carroll and her elder sister, Goldie Carroll, who occupied the room together. Nina Carroll was, as before stated, about sixteen years old, and her sister was about twenty-one years old. They were both well acquainted with the defendant, and he and Goldie Carroll had been on terms of intimacy for several years. She testified that he had promised to get a divorce from his wife and marry her, and that they had frequently had sexual intercourse. It is claimed

that he wrongfully entered the bedroom of these young ladies in the night time and attempted, by force and threats, to have intercourse with the younger of them.

There are several assignments of error, and the one to which we shall address our attention is that the evidence is not sufficient to make out a case of assault with intent to rape; and, as the conclusion we reach on that question is decisive of the case, the other assignments need not be discussed.

Nina Carroll testified that she recognized the defendant as her assailant, and she gave the following testimony concerning the assault: "Q. Who woke you up? A. He was in the room. Q. This defendant? A. Yes, he was down on his knees by the side of my bed, and had hold of my hand and woke me up. He was whispering to me. I think he was saying, 'Girlie.' I asked his business in there. I think he was on his knees. He told me to keep still, to keep quiet, or he would kill me. He talked there for a few minutes, talking to me. I didn't say anything. He told me to keep still, and I did. I pushed my sister with my arm and woke her up. She called him by name, and asked what was the matter. Q. What did she call him? Ensley? A. She called him by name. I didn't say anything to her at all. He said to her 'You over there, you keep still.' He told us what he was there for. Q. What did he say? A. He said, 'You got to do business with me right here. You over there, you are sick. You can't, I know. You can't come across. You are not, and you have to come across.' Q. That's to you. A. Yes, he was still down there talking to me. Q. What did he have with him, when he said he would kill you? A. He had a gun. * * * Q. What did you say to him when he said you had to come across, to do business with him? A. I didn't say anything. I just laid there. She commenced talking to him and begging for me. Q. What did she say? A. She said, 'For God's sake, don't ruin my little sister. She has no mother. For God's sake, don't ruin her!' She said, 'I will take it all on myself to save her. He said, 'You are sick. I don't want you. She's the one I want.' She said, 'For God's sake, I will do anything in the world to save her.' He said, 'Well, since you begged so hard, come on. You get on this side of the bed.' He told me to get over there. I went to

the foot of the bed, and she crawled over the head of the bed, and I went to the head. We were sleeping with our heads to the foot. I got on the other side, and she got on the side I was on. I don't know; I guess he thought I was trying to get out of bed. He thought I was trying to get out for something. He said, 'Being you are getting out somewhere, I will just put my hands on you.' I said something to him. I don't remember just what I said to him. He said, 'Just for that, I will put my hands on you,' and he did. I didn't say anything to him at all. Q. Was he trying to have intercourse with you against your will? Was that against your will? A. Yes. Q. Did he tell you that he would kill you there in the presence of your sister with the gun? A. Yes, if I didn't. She begged him out of it."

This is all the testimony on the subject, and the question is, was it sufficient to constitute an assault with intent to commit rape? The evidence shows that there was a technical assault by touching or taking hold of the hand of the girl by the defendant, and also, after he had desisted from his attempt to induce her to have sexual intercourse with him, by again touching her person, Drawing a gun with intent to use it or to coerce her was also a technical assault. But did these technical assaults constitute a part of the essential element of the crime of rape, namely, the act of sexual intercourse? If not, the crime of assault with intent to commit rape was not complete. Undoubtedly, if he had drawn the pistol for the purpose of inflicting death upon the assaulted girl, the crime of assault with intent to kill would have been complete, even though he desisted from carrying out his intention; and if he had placed his hand upon the girl as a part of the act of having sexual intercourse and with intent to secure carnal intercourse with her, this would have completed the offense of assault to commit rape. But, according to this testimony, his taking hold of the hand of the girl for the purpose of waking her up and the drawing of the pistol on her were merely a part of the preparation for the act, and not an overt attempt to commit the act itself. He did not try to have sexual intercourse with her, but was merely attempting to induce her to yield to his embraces, or, by threats, to coerce her into doing so.

The case is, we think, controlled by the decision of this

court in *Anderson* v. *State*, 77 Ark. 37. There the accused found a ten-year-old girl waiting at a railroad station for the arrival of a train, and on some false pretext induced her to leave the station with him. After they got out of the station and got to the mouth of an alley, he kissed the girl and tried to pull her into the alley. She commenced crying, and he turned her loose, and she ran back to the station. He was indicted and convicted of the crime of assault with intent to rape, and this court reversed the case on the ground that the evidence did not show that the assault with such intent was complete. Judge BATTLE, delivering the opinion of the court, said:

"The statute of this State, requiring the unlawful act to be coupled with the present ability to do the injury, clearly indicates that the unlawful act must be the beginning or part of the act to injure, or the perpetration of the crime, and not of preparation to commit some contemplated crime."

Applying that rule to the facts of the present case, it is clear that the only overt act was committed merely in preparation for the perpetration of the crime, and not in the commission of the crime itself.

Another case which is decisive of this is *Paul* v. *State*, 99 Ark. 558. There the court reiterated the doctrine of the Anderson case upon a somewhat different state of facts, but to which the same principle was applicable.

The Attorney General relies upon the recent case of *Birones* v. *State*, *ante* p. 82, in which we held that, where the accused entered, in the night time, the sleeping apartments of two young ladies, the jury were warranted in drawing the inference that he did so for the purpose of forcibly having sexual intercourse with one of them, and that this was sufficient to sustain a conviction for the crime of burglary. The case here is different. The offense of burglary was complete upon the forcibly entry of the house with intent to commit rape, whether there was an actual assault committed or not; but upon the charge set forth in the indictment in this case there must have been an actual assault made upon the girl with intent to have sexual intercourse before the crime was complete. We are convinced, therefore, that the judgment is not sustained by the evidence and it must, therefore, be reversed. The evidence may be sufficient to justify a con-

viction of a lower degree of assault, and for that reason the cause is remanded for a new trial.

HART, J., dissents.