POOLE *v.* STATE.

5023                                    353 S. W. 2d 359

Opinion delivered February 5, 1962.

*Harold Sharpe,* for appellant.

*Frank Holt,* Attorney General, by *Thorp Thomas,* Asst. Attorney General, for appellee.

PAUL WARD, Associate Justice. Appellant, L. C. Poole (a colored man), was convicted on a charge of assault with intent to rape a fourteen year old white girl and sentenced to serve the minimum term of three years in the penitentiary. On appeal appellant urges two points for a reversal, viz.: (1) Insufficiency of the evidence, and (2) the court's refusal to give a certain instruction requested by him.

1. This point will be considered under two subheads, viz.: (a) Insufficiency of evidence to show appellant was the man who made the assault, and (b) insufficiency of evidence to show the specific intent to rape.

(a) The evidence shows (and appellant makes no attempt to deny) that a colored man assaulted the girl at approximately 6:15 Saturday evening, January 28, 1961 in Forrest City. It is also undisputed that the girl gave a correct account of the assault. Although the testimony raises grave doubts, we think, that appellant is the person who committed the assault, we do find

substantial evidence from which the jury could find he is. Therefore, since we are reversing the judgment of conviction on point (b), we will set out only such testimony as relates to that point.

The prosecuting witness testified in substance, as follows:

I am 14 and I have lived in Forrest City since I was born. I left my mother at Kimball's and went up the street to go to my brother's house; I heard someone running and when I turned my head, he grabbed me by the throat, putting one arm around my neck, and I pulled his hand off my mouth and screamed; He said he would kill me if I didn't stop screaming; He drug me under the viaduct; I was not screaming when Ruben Homewood came, because he had put his hand over my mouth; When he saw Ruben Homewood coming, he turned and ran on the side of the viaduct and Ruben went on behind him. Outside of the defendant having his hand on my mouth and throat, no other part of my body was touched. I am positive of that, just my mouth and throat were touched.

The above is all of the evidence tending in any way to show the intent of appellant to rape.

(b)   Undoubtedly the girl's testimony (and we accept it as true) raises a strong suspicion that appellant intended to rape her, and this suspicion is not weakened by the fact that he is colored and she is white. However, under our system of jurisprudence, no one can be convicted on suspicion alone. In a case of this type the essence of the charge is "intent" and it must be proved by evidence beyond a reasonable doubt, even though it may be proved by circumstances surrounding the assault. Therefore, in line with our judicial system and to avoid a miscarriage of justice, our Court has clearly pronounced certain safeguards that we are bound to observe. Such safeguards are clearly recognizable in our decisions referred to hereafter.

*Anderson* v. *State,* 77 Ark. 37, 90 S. W. 846. A girl 10 years old was waiting at a railroad station when Anderson, a stranger, accosted her and told her he was to look after her; he took her behind the depot and offered her $10; he offered her a present, and asked her to go see some children; he kissed her and tried to pull her into an alley. The girl began to cry and Anderson left. The trial court convicted Anderson for assault with intent to rape. In reversing the conviction this Court, among other things, said: ". . . the unlawful act must be the beginning or a part of the act to injure, of the perpetration of the crime, and not [a part] of preparation to commit some contemplated crime". To illustrate what the Court meant, it pointed out "Anderson never attempted to have sexual intercourse with Pearl Bond by force or consent. He never asked her for permission; never put his own person in condition or position for such an act; never attempted to raise her clothes, or to throw her down, or to do acts without which sexual intercourse could not be accomplished." The analogy and application of that case to this case is too obvious to require comment.

*Paul* v. *State,* 99 Ark. 558, 139 S. W. 287. Here appellant entered the home of a housewife under the pretense of wanting to buy some milk; when she entered the dining room appellant ". . . rushed up, took hold of her arm and asked her if she would not like to make a half-dollar easy". She broke loose and ran out of the house screaming. Appellant was convicted of assault with intent to rape. Although the assault there differed from the assault here and although some circumstances there are not present here, this Court, in reversing the case, did not rely on them but placed its decision squarely on the reasoning set forth in the *Anderson* case, *supra,* from which it quoted much of what we have quoted heretofore. The Court did say, as we say here, that the evidence was not sufficient to sustain a conviction of assault with intent to rape, ". . . but that it will sustain a judgment for an assault and battery. . . ."

*Douglass* v. *State,* 105 Ark. 218, 150 S. W. 860. Appellant entered the bedroom of the prosecuting witness at night; he was on his knees beside the bed holding her hand; he had a gun and told her to keep quiet or he would kill her; he said what he was there for; he put his hands on her. His conviction for assault with intent to rape was reversed on appeal. Again there were some other facts not present in the case before us, but again this Court did not rely on them to reverse the case. Instead the Court cited and followed the reasoning in the *Anderson* and *Paul* cases, *supra,* stating:

"Undoubtedly, if he had drawn the pistol for the purpose of inflicting death upon the assaulted girl, the crime of assault with intent to kill would have been complete, even though he desisted from carrying out his intention; and if he had placed his hand upon the girl as a part of the act of having sexual intercourse and with intent to secure carnal intercourse with her, this would have completed the offense of assault to commit rape. But, according to this testimony, his taking hold of the hand of the girl for the purpose of waking her up and the drawing of the pistol on her were merely a part of the preparation for the act, and not an overt attempt to commit the act itself."

There the Court also, in reversing the case, said: "The evidence may be sufficient to justify a conviction of a lower degree of assault, and for that reason the cause is remanded for a new trial".

*Wills* v. *State,* 193 Ark. 182, 98 S. W. 2d 72. There the prosecuting witness was going down a road when appellant grabbed her, put his arms around her; he tore her shirt, invited her to go home with him, and a little later he slung her in a ditch and hit her; she began to "holler" and a Mr. Fleming came down to where they were. The girl did not say whether appellant tried to rape her and she didn't say he did not try. The trial court convicted appellant for assault with intent to rape, and this Court reversed. In doing so the Court, among other things, approved this statement relative to what is

necessary to prove the *intent* to rape: ". . . the intent is to be ascertained from the *commission of some act or acts at the time or during the progress of the assault*". (Emphasis added.)

It appears to us that the phrase above emphasized clearly pinpoints the essence of this Court's holdings in the cases previously cited. That is, the assault itself is not sufficient to show intent in cases of this type, but there must be some act or words in connection with the assault to show the intent of the assault. It is conceded, or must be conceded, that there were no such acts or words in connection with the assault in the case under consideration. Such being the situation the jury had to arrive at the intent of appellant by speculation or conjecture. The Court in the *Wills* case said: "Speculation and conjecture cannot be substituted for affirmative facts and circumstances."

2. Since, for reasons already set out above, we are reversing the judgment of the trial court, we deem it unnecessary to discuss fully the court's refusal to instruct on other offenses. Appellant asked the court to instruct on simple assault, and the court refused to do so. In this the court was correct because, in our opinion, the facts show appellant (if he is the man who committed the assault) to be guilty of some higher degree of assault than mere simple assault.

As shown by the authorities cited heretofore, we have the power, upon reversal, to remand the cause for another trial, and we have chosen to do so in this instance. In this connection see also: *Reed* v. *State,* 97 Ark. 156, 133 S. W. 604; *Johnson* v. *State,* 210 Ark. 881, 197 S. W. 2d 936; *Grigson and Gibson* v. *State,* 221 Ark. 14, 251 S. W. 2d 1021; and *Anderson* v. *State,* 226 Ark. 498, 290 S. W. 2d 846.

The judgment of the trial court is accordingly reversed, and the cause is remanded for a new trial.

GEORGE ROSE SMITH, ROBINSON, and BOHLINGER, JJ., dissent.

598

SAM ROBINSON, Associate Justice, dissenting. The appellant is a negro man, married and the father of a child. Certainly in making the attack on the 14 year old white girl at a lonely spot in the nighttime he had an intent to do something besides merely choke her and drag her under a viaduct. In addition to choking her and dragging her under the viaduct, he put his hand over her mouth and threatened to kill her if she screamed. These actions all indicate an intent to do something.

Twelve men, qualified jurors, who had the opportunity to see and hear both the defendant and the little girl, said that they believed that the defendant intended to rape the child. Here, the majority is saying that the jury had no valid right to reach such conclusions. Since the majority has said that the evidence is not sufficient to show an intent to rape, I think the majority should point out in what way the defendant's actions were inconsistent with an intent to rape.

The jury was entitled to draw any reasonable inference deducible from the evidence. Where the facts proved in a case are such that men of reasonable intelligence may honestly draw therefrom different conclusions on the question in dispute, the case should be submitted to the jury for determination, *Van Lodge AOUW* v. *Banister,* 80 Ark. 190, 96 S. W. 2d 742. Where a fair minded man might honestly differ as to the conclusion to be drawn from the facts, whether controverted or not, the question at issue is for the jury. *Williams* v. *Cooper,* 224 Ark. 317, 273 S. W. 2d 15. *McGeorge Construction Company* v. *Mizell,* 216 Ark. 509, 226 S. W. 2d 566. *Wren* v. *D. F. Jones Construction Company,* 210 Ark. 40, 194 S. W. 2d 896.

Here the majority is saying that the trial court should have directed a verdict of "not guilty" on the charge of assault with intent to rape, because no reasonable person could draw an inference from the evidence that the one who made the attack intended to rape the little girl. I don't see how it can be said that no reasonable person could draw an inference from the testimony

that the defendant who made the attack intended to commit rape.

If the negro did not intend to rape the little girl, why did he attack her? She did not know him, she had done him no harm. Did he merely want to play with her? Certainly it is not the custom or practice for white girls to play with negro men at lonely spots on dark nights. The defendant had no reason to think she would play with him. If he did not intend to rape her, why did he grab her by the throat? Why did he put his hand over her mouth? Why did he threaten to kill her if she made an outcry? Why did he drag her under the viaduct? There is no indication that she was a person that one would want to rob. There is no showing that she had a dime. If the defendant had merely wanted to murder her, he could easily have done that without dragging her anywhere or giving her any time to make an outcry. The answers all add up to one thing and one thing only. The defendant intended to rape the little girl.

The majority cite four cases to support the view expressed. Three of the cases are easily distinguishable from the case at bar. First is the case of *Anderson* v. *State,* 77 Ark. 37, 90 S. W. 846. In that case there was not a scintilla of evidence to the effect that the defendant intended to commit rape. True, he made improper advances to the little girl, offered her $10.00 and when she would not agree to his suggestions, she was permitted to return to the waiting room of the railroad. At no time did the defendant use any violence whatever. He certainly did not grab her by the throat and put his hand over her mouth and threaten to kill her.

Next the majority cite *Paul* v. *State,* 99 Ark. 558, 139 S. W. 287. This case is similar to the *Anderson* case. In the *Paul* case the defendant made improper remarks to a married woman, placed his hand on her arm and offered her fifty cents. There was no evidence whatsoever of an attempt to commit rape.

The next case cited by the majority is *Douglas* v. *State,* 105 Ark. 218, 150 S. W. 860. Again in that case

the defendant made improper requests of a young girl, who at the time was in bed with her sister. The defendant had been having an affair with the sister for a long time. There was no evidence that he intended to rape the young girl to whom he made the improper remarks.

The next case cited by the majority is *Willis* v. *State,* 193 Ark. 182, 98 S. W. 2d 72. That case does support the majority. There, two drunken toughs made an attack on a 14 year old girl that they did not know. They tore her shirt, invited her to go home with them, accused her of having a foul disease, threw her in a ditch and one of them got on top of her. The effect of the opinion in that case is that there is no evidence from which a reasonable person could draw an inference that the thugs intended to rape the child. The decision is wrong. It is contrary to the overwhelming weight of authority; it is indefensible and it should not be followed.

The great weight of authority is that facts such as the facts in the case at bar are sufficient to sustain a conviction of assault with intent to rape.

In *State* v. *Axelson,* (Wash.) 223 P 2d 1058, the facts are very similar to the facts in the case at bar. In the *Axelson* case the Court stated the facts as follows:

"On the night of November 20, 1949, at approximately 9:45 p.m., the prosecuting witness was walking along State Street, in the city of Bellingham. It was deserted. She testified that after she passed the Armory she saw something crouched coming down the center of the street, and . . . I thought it was our dog, . . . and right then the man came walking down the street toward me, . . . and he ran up to me and put his arm around me and put his hand over my mouth and he said: 'I want to talk to you' and he kept pushing me backwards, and right behind me was a big bank . . . and he kept working me backwards and I was struggling and I had my bag in my hand, and

I . . . hit his face as hard as I could and his hand slipped away from my mouth and I let out an awful scream and, . . . he reached up with his fist and hit me . . . on the cheek with his fist, and I fell to the ground.''

The Court said ''We are not prepared to say, as a matter of law, that the jury was not authorized to infer an intent to commit rape in this case.''

*Jackson* v. *State,* 35 S. W. 2d 409 (Tex.), is another case directly in point. The Court said:

''. . . The issue of whether or not the assault was made with the specific intent to rape, to have carnal knowledge of the woman assaulted without her consent by force was fairly submitted to the jury in the court's charge, and, the jury having decided said issue against the appellant, we see no reason under the facts in this case to disturb the verdict.''

In *Washington* v. *State,* (Tex.) 103 S. W. 879, the Court said:

''Appellant further contends that the proof of the specific intent to rape is not sufficiently made out by the state; that under the circumstances the proof equally tends to show that appellant may have entertained the intent to rob. We do not agree with this contention. The evidence shows that appellant seized hold of the prosecutrix; made no demand of her to surrender her property; he knew she was a woman, and there is no testimony tending to show that he had any reason to believe she had valuables; she attempted to scream, and he merely told her to hush, and then persisted in choking her down, evidently to make her hush. If he had wanted to take her valuables, he had ample opportunity to do so. If appellant had any other purpose than to have carnal intercourse with prosecutrix, there is no manifestation of it in this record, and the circumstances furnished him ample opportunity to have taken her pocketbook, which was in her hand at the time of the assault, or to have taken her breastpin from her neck, if he had so desired.

His setting upon a young girl in the nighttime, under the circumstances, and his violence, and when she attempted to scream telling her to hush, would strongly indicate his intent. In our opinion, the facts are amply sufficient to show his purpose, and, but for the fact of her screams, and of assistance rushing to her rescue, he would, no doubt, have accomplished his design.''

The same thing is true in the case at bar. If the child had not been able to scream in time, the chances are that she would have been raped.

Other cases with similar facts in which the Court held the evidence to be sufficient to support the conviction are *People* v. *Jones*, (Cal.) 296 P 219, and in *People* v. *Mayer*, (Ill.) 64 N. E. 2d 372, the Court said:

''It is for the jury to determine the intent. The intent to rape may become manifest from words, actions, violence or other conduct. In the same way actions may disclose whether the purpose is to be accomplished by undue familiarity, indecent proposals or insulting conduct.''

In *Morgan* v. *State*, 189 Ark. 981, 76 S. W. 2d 79. In speaking of a charge of assault with intent to rape, this Court said:

''. . . If the assault is actually begun and the intent can be inferred from the acts committed, the offense is complete, notwithstanding the fact that the assailant may, for some reason, relent and forbear from the consummation of his purpose.''

It is my opinion that judgment in the case at bar should be affirmed and that in reversing it a very bad precedent is being established and one that will have serious repercussions.

For the reasons heretofore set out, I respectfully dissent.

I am authorized to say that Mr. Justice GEORGE ROSE SMITH and Mr. Justice NEILL BOHLINGER join in this dissent.