Franklin FREDERICK *v.* STATE of Arkansas

CR 75-62                          528 S.W. 2d 362

Opinion delivered September 29, 1975

*Harold L. Hall,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Frederick contends that the evidence was insufficient to support a jury verdict finding him guilty of assault with intent to rape. He also

argues that the court erred in refusing to give his requested instruction on simple assault, as a lesser included offense. The state has confessed error on the matter of the jury instruction in reliance on *Fike* v. *State*, 255 Ark. 956, 504 S.W. 2d 363, but we find no error in that respect, as we will point out. Appellant also challenges the sufficiency of the evidence, so we must consider it, viewing it in the light most favorable to the state. We find it sufficient.

Martha Martin Ward worked until 10:45 on the night of July 4, 1974. She then went to her place of residence at 1500 Scott Street in Little Rock, where she found her sister and two nieces, aged 9 and 5 and her 11-month-old grandson. The sister left immediately to report for work at 11:00. Mrs. Ward's cousin, Danny Ray Powell, came and stayed until 2:00 A.M. and her fiance visited for 35 or 40 minutes and left about 12:30 A.M. Mrs. Ward's 16-year-old daughter came home a little after midnight and later fell asleep on a living room couch, while watching television. Mrs. Ward went to bed to sleep about 2:30 A.M., wearing her underclothes. She awakened sometime before 4:00 A.M. to find a hand in her face. Thinking it was her cousin, she said, "Don't scare me like that". A male person, positively identified as Frederick, responded, "Shut up, bitch, I am going to kill you." This man had one knee on her bed and was propped on the bed in such a manner that one foot was on the floor. When she screamed, he slapped her and told her to shut up, but she screamed again. At this time her daughter awakened and, thinking her mother was having a nightmare, came to the door of the room. Standing in the doorway near the infant grandson's crib, she asked this man, "What are you doing to her?" and commanded, "Let her go." Frederick ordered the daughter to sit down and, when she did not comply, told Mrs. Martin to tell her to do so or he was going to kill her (Mrs. Martin) immediately. The daughter then sat on the foot of the bed. Frederick told her to watch because she was next. Frederick had an "afro comb" which he started moving down below Mrs. Martin's waist, and while holding her, he tried to cut her vagina with the comb, which was "filed down". He had ripped her underclothes to shreds. Mrs. Martin then pushed him backward into a chair with her foot and told her daughter to go for help, saying that if one of them

had to die, let it be her (Mrs. Martin). As the daughter escaped, Frederick removed a sheet Mrs. Martin had over her, tore her pants off, dragged her through the door and out the living room door. In the front yard, he kept hitting her and stripping off her clothes, tried to jab her with the comb and pull her around the house, but, when either a person or a car approached, he threw her down, kicked her and ran away, as her sister and daughter were returning to the house. Mrs. Martin did not see Frederick again until 4:00 or 4:30 P.M., when she identified him as her assailant at police headquarters.

Appellant relies upon *Douglass* v. *State*, 105 Ark. 218, 150 S.W. 860, 42 LRA, NS, 524, which in turn is bottomed upon *Paul* v. *State*, 99 Ark. 558, 139 S.W. 287 and *Anderson* v. *State*, 77 Ark. 37, 90 S.W. 846. In each of these cases we found the evidence insufficient, but all lack an element present here. In *Douglass*, we said that taking hold of the victim's hand, awakening her and drawing a pistol on her with a threat to kill her if she did not keep quiet were not overt acts constituting the beginning of, or a part of the perpetration of, the crime of rape, but were merely a part of the preparation for the act. In *Paul*, the assailant made improper remarks to the victim, placed his hand on her arm and offered her fifty cents. There were no acts indicative of an intention to rape her. In *Anderson*, the assailant never put his person in position to have sexual intercourse, never attempted to throw his victim down or interfered with her clothing.

This case may also be distinguished from *Poole* v. *State*, 234 Ark. 593, 353 S.W. 2d 359, not cited by appellant. In *Poole*, no part of the body of the victim of the assault was touched other than her mouth and throat. The assailant put a hand over her mouth, his arm around her neck, grabbed her by the throat and dragged her under a viaduct. This court held (4-3) that there was no evidence of an intention to rape.

It is clear from these cases that an intention to have sexual intercourse with the victim is not sufficient, unless an intention to accomplish that purpose by force may be ascertained from acts or words connected with the assault and there is some overt act toward accomplishment of that pur-

pose. In *Poole*, we recognized that intent to rape might be proved by circumstances surrounding the assault from which the intent may be inferred. See also, *Wills* v. *State*, 193 Ark. 182, 98 S.W. 2d 72; *Boyett* v. *State*, 186 Ark. 815, 56 S.W. 2d 182.

Here, the assailant removed the sheet with which his victim attempted to keep herself covered, tore her underclothes away, attempted to throw her down, touched her private parts with his comb and remarked to her daughter that she was next. These acts, when considered together, along with the assailant's position on the bed constitute sufficient circumstantial evidence from which a reasonable mind might conclude that the assault here was the beginning and a part of the perpetration of the crime of rape and that it was made with the intention of raping the victim. As pointed out in *Poole*, the intent is to be ascertained from the commission of some act or acts at the time or during the progress of the assault. We also said that there must be some act or words in connection with the assault to show the intent. We find that there were such acts and words in this case. In *McGee* v. *State*, 215 Ark. 795, 223 S.W. 2d 603, the assailant's overt acts were held to be sufficient. There he grabbed the female victim "low down" on her person, put his hands "all over her", knocked her down, persisted in the assault in a manner that resulted in the buttons being torn from her dress, and threw her down but failed to take the victim's purse which he could easily have done.

In *Boyett* v. *State*, 186 Ark. 815, 56 S.W. 2d 182, the assailant forced his victim off a road into a forest, placed his hand over her mouth to prevent an outcry, threw her upon the ground, exposed her person by pulling down her underclothing and got down on his knees over her, but for some reason proceeded no further. This evidence was held sufficient to sustain a conviction of assault with intent to rape.

Not only is the case at bar readily distinguishable from the line of authorities relied upon by Frederick, but it clearly falls into the McGee-Boyett category.

Appellant requested that the court instruct the jury on

the offense of simple assault as a lesser included offense. It is true that simple assault is a lower degree in the generic class of assault to rape. See *Wills* v. *State,* 193 Ark. 182, 98 S.W. 2d 72. Recently, we reversed a conviction of assault with intent to rape for the failure of the trial court to give an instruction on simple assault in *Fike* v. *State,* 255 Ark. 956, 504 S.W. 2d 363. The reasons given were that simple assault is necessarily contained within assault with intent to rape and the evidence showed the existence of all the elements of the lesser offense, the charge contained substantive allegations permitting the proof of the lesser offense, and the jury had the prerogative to accept all or any part of the testimony of any witness, whether controverted or not, and to evaluate the evidence and consider whether there was only an unlawful assault, even though the evidence was sufficient to sustain conviction of the greater offense.

Yet, we are justified in approving the refusal of such an instruction where the undisputed evidence shows that the accused was guilty of assault with intent to rape or nothing at all. See *Smith* v. *State,* 150 Ark. 193, 233 S.W. 1081. Furthermore, where it is clear that the accused is guilty of a more serious offense than the lesser offense on which he asks an instruction, it is not error to refuse an instruction on the lesser offense. *Poole* v. *State,* 234 Ark. 593, 353 S.W. 2d 359. The assailant of Mrs. Ward, at the very least, was guilty of an aggravated assault or assault with a deadly weapon. See Ark. Stat. Ann. § 41-605 (Repl. 1964). Consequently, there was no error in refusing the instruction on simple assault.

The judgment is affirmed.