Eric Reed DOLLAR *v.* STATE of Arkansas

CR 85-148                                   697 S.W.2d 868

Supreme Court of Arkansas
Opinion delivered September 30, 1985

*John A. Crain*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant, Eric Reed Dollar, was charged with possession of marijuana, a controlled substance, with the intent to manufacture and deliver. He was found guilty and sentenced to a term of twelve years in the Department of Correction. Ark. Stat. Ann. § 82-2617 (a)(1)(iv), (Act 306 and

Act 417 of 1983) under which appellant was charged, failed to state the offense was a felony and on that basis appellant claims error in the trial court's refusal to grant his motion to reduce the charge to a misdemeanor.

Appellant relies on *Bennett v. State*, 252 Ark. 128, 477 S.W.2d 497 (1972). In *Bennett*, the appellant was convicted under § 82-2617, as it was originally enacted by Act 590 of 1971, and sentenced to one year imprisonment in the state penitentiary. That penalty provision provided:

> (1) Any person who violates this subsection with respect to
>
> (a) a controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than fifteen years or fined not more than $25,000.

Felonies and misdemeanors were statutorily defined at the time as:

§ 41-102. Public offenses are felonies and misdemeanors.
§ 41-103. A felony is an offense of which the punishment is death or confinement in the penitentiary.
§ 41-104. All other public offenses are misdemeanors.

In *Bennett* we held the failure of Act 590 to include the words "imprisoned in the penitentiary," required reversal. We reasoned that penal provisions are strictly construed and nothing would be taken as intended which is not clearly expressed. All doubts were to be resolved in favor of the defendant.

Appellant argues the principles stated in *Bennett* apply with equal force to this case and the definitions of felony and misdemeanor that now appear in the 1976 Arkansas Criminal Code require the same result in construing the 1983 statute.

§ 82-2617(a)(1)(iv) (Acts 306, 417, 1983) provided:

Criminal Penalties.

(a) Except as authorized by this Act it is unlawful for any person to manufacture, deliver, or possess with intent to

manufacture or deliver, a controlled substance.

(1) Any person who violates this subsection with respect to:

(i) A controlled substance classified in schedule I or II, which is a narcotic drug, is guilty of a class Y felony;

(ii) Any other controlled substance classified in schedule I, II, or III is guilty of a class B felony;

(iii) A substance classified in schedules IV or V is guilty of a class C felony;

(iv) A controlled substance classified in Schedule VI shall be (a) imprisoned for no less than four (4) nor more than ten (10) years and/or fined no more than twenty-five thousand dollars ($25,000) if the quantity of the substance is less than ten (10) pounds, or (b) imprisoned for no less than five (5) years nor more than twenty (20) years and/or fined no less than fifteen thousand dollars ($15,000) nor more than fifty thousand dollars ($50,000) if the quantity of such substance is ten (10) pounds or more but less than one hundred (100) pounds, or (c) imprisoned for no less than six (6) years nor more than thirty (30) years and/or fined no less than fifteen thousand dollars ($15,000) nor more than one hundred thousand dollars ($100,000) if the quantity of the substance is one hundred (100) pounds or more.

The two sections cited by appellant from the criminal code provide:

§ 41-112 Felonies.

(1) An offense is a felony if:

(a) it is so designated by this Code.

(b) it is so designated by a statute not a part of this Code.

(2) Felonies are classified as follows:

(3) Any felony defined by a statute not a part of this Code that neither specifies the class of the felony nor prescribes limitations on a sentence to imprisonment

upon conviction thereof is a class D felony. Any felony defined by a statute not a part of this Code that does prescribe limitations on a sentence to imprisonment upon conviction thereof is an unclassified felony.

§ 41-113 Misdemeanors.

(1) An offense is a misdemeanor if:

(a) it is so designated by the Code.

(b) it is so designated by a statute not a part of this Code.

(c) it is not designated a felony and a sentence to imprisonment is authorized upon conviction thereof.

Appellant argues that under § 41-112 (1) & (2), an offense is only a felony if named a felony by either the criminal code or by other statutes and as the offense in § 82-2617 (a)(1)(iv) was not so designated that offense is not a felony. We disagree with appellant's conclusion.

■ *Bennett* was correct in its statement of strict construction of penal statutes. However, even strict construction of penal statutes does not override the primary consideration of all statutory construction—the intent of the legislature.
The rule is stated in Sutherland, Statutory Construction:

> "The rule that penal or criminal statutes are given a strict construction is not the only factor which influences the interpretations of such laws; instead, the rule is merely one among various aids which may be useful in determining the meaning of penal law. This has been recognized time and again by the decisions, which frequently enunciate the principle that the intent of the legislature or the meaning of the statute must govern and that a strict construction should not be permitted to defeat the policy and purposes of the statute. § 59.06, p. 18.

The Supreme Court expressed a similar view in *Bell* v. *United States*, 359 U.S. 80 (1955);

> It may fairly be said to be a presupposition of our law to

resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense which other enactments, not cast in technical language, are to be read . . . It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses. . . .

We have followed the same approach in our cases. In *Hice* v. *State*, 268 Ark. 57, 593 S.W.2d 169 (1980) we said:

"The basic rule of statutory construction, to which all other interpretative guides are really subordinate, is to give effect to the legislative intention. Penal statutes are not to be so strictly construed as to exclude cases which the words, in their common and ordinary acceptation would apply to. And a literal application of a statute which would lead to absurd consequences should be discarded in favor of a more reasonable interpretation." See also *Fairchild* v. *State*, 286 Ark. 194, 690 S.W.2d 355 (1985); *St. Louis, I.M. & S. Ry.* v. *Freeman*, 95 Ark. 218, 128 S.W. 1024 (1910).

In the case before us there are no doubts to be resolved in favor of the defendant. A simple examination of the statute before it was amended, Act 557 of 1977, and as amended in Acts 417 and 306, makes the intention and expression of the legislature clear. The amended statute was enacted to upgrade the penalties for offenses which were already felonies, and it is obvious the legislature intended no change in the felony status of these offenses.

Narcotic controlled substances in Schedule I were formerly class A felonies but in the amended statute were upgraded to class Y felonies. Non-narcotic substances in Schedules I, II and III were B felonies and were not changed. Substances in Schedules IV, V and VI were formerly class C felonies. As amended, IV and V substances remained C felonies, but Schedule VI substances which had also been C felonies were significantly upgraded. The new penalties for Schedule VI substances consisted of three ranges of sentences depending on the quantity of the substance

possessed—4-10 years, 5-20 years and 6-30 years. Not only were all three ranges harsher than the previous class C felony (3-10 years) the latter two ranges are classified by the criminal code penalty section as Class B and A felonies, respectively. Certainly within this amended sentencing scheme it would be wholly contrived to argue the legislature intended this offense to be lowered to the status of a misdemeanor while at the same time increasing its punishment to that of the higher range of felonies.

This view of the legislative intent is reinforced by the emergency clause of Acts 417 and 306, which reads:

> It is hereby found and determined by the General Assembly that the problem of drug abuse in this State is increasing at an alarming rate and that additional provisions are needed to assist in the enforcement of the provisions of Act 590, as amended . . . furthermore, it is hereby found and determined by the General Assembly that the problem of manufacturing, delivering, or possessing with intent to manufacture or deliver, those controlled substances classified in schedule VI is increasing at an alarming rate, both in terms of occurrence and quantity, and that additional provisions are needed to assist in the enforcement of the provisions of Act 590, as amended, particularly with respect to those substances classified in Schedule VI.

The urgency to assist in the enforcement of the Controlled Substances Act and particularly Schedule VI substances which were singled out, is reflected in the change in the provisions of § 82-2617.

■ Under the upgrading scheme in the amended statute and the concerns expressed in the emergency clause the legislative expression is manifest. We would abandon common sense if we allowed a purely mechanical omission to dictate a conclusion that is contrary to the stated legislative intent and which defeats the express policy and purpose of the statute.

This case provides a more substantial basis for winnowing legislative intent than *Bennett*. Here, a comparison of the statute before and after amendment, a clear statement of legislative intent, and the nature of the penalty scheme itself provide a basis

from which to draw a firm conclusion. In *Bennett* we were dealing with only the original enactment. Moreover, given the traditional terms for misdemeanors (see Commentary to Ark. Stat. Ann. § 41-901) the sentencing range from no confinement to fifteen years had some inherent ambiguity. Drawing an inference only on the basis of that penalty provision and the original enactment would have involved an element of speculation.

■ Appellant's remaining point—the court should have given an instruction on simple possession because the marijuana could have been for appellant's "own personal use."—is without merit. For one thing, the requested instruction is not abstracted. See Rule 11(f) Rules of the Supreme Court and Court of Appeals, *Moser* v. *State*, 262 Ark. 329, 557 S.W.2d 385 (1977); *Chapman* v. *State*, 201 Ark. 91, 143 S.W.2d 575 (1946); *Williams* v. *Fletcher*, 267 Ark. 961, 593 S.W.2d 48 (Ark. App. 1979).

For another, we cannot say the proof obligated the trial court to give the instruction. We find no mention in the record that appellant's participation was limited to acquiring marijuana simply for "personal use." That expression does not even appear in the record, so far as we can determine.

The state's proof established that appellant and Joe Cross were arrested at about 9:00 p.m. after running a police roadblock set up for an unrelated crime. While the police pursued them, Joe Cross crawled into the bed of the truck and threw out five large garbage sacks. These were recovered and found to contain over twenty pounds of marijuana. Eventually appellant was stopped and the arrests were made. Joe Cross testified for the state, having already received a ten year sentence for his part. He said the patch was his and that appellant was helping him with it. They had been there two or three times to check on the plants and on the day of their arrests they had worked several hours pruning the plants. They planned to divide the twenty odd pounds of clippings obtained.

The argument is based on an affirmative answer by Cross when asked by defense counsel whether appellant was getting the marijuana for himself. But the previous questions show the witness was simply explaining that appellant was not being paid for his efforts in the venture, rather they were dividing the

marijuana equally:

Q.    All right, sir, now did you pay him (appellant) any money to help you?

A.    No sir, when we picked the buds we split it and halfed them.

Q.    All right, sir. So you weren't really giving him any money at all.

A.    No.

Q.    He was getting marijuana for himself, is that it?

A.    Yes, sir.[1]

The trial court did not view that testimony as a basis for concluding that the appellant's only interest in the marijuana was for "personal use" and we cannot say that interpretation was wrong. Appellant did not testify, and offered no proof on the issue now argued.

We note that it was appellant's truck being used to harvest the crop, that both men had clipping tools, that they planned to equally divide the marijuana, and appellant was driving when the two tried to run the roadblock. That proof being undisputed we do not think a single response from a third party in the context of the questions being asked affords a rational basis for concluding that the appellant only wanted the marijuana for personal use. *Utley* v. *State*, 266 Ark. App. 794, 586 S.W.2d 242 (1979); *Barksdale* v. *State*, 262 Ark. 271, 555 S.W.2d 948 (1977); *Frederick* v. *State*, 258 Ark. 553, 528 S.W.2d 362 (1975); *Gilchrist* v. *State*, 241 Ark. 561, 409 S.W.2d 329 (1966);

The judgment is affirmed.

PURTLE, J., not participating.

---

[1] Record, p. 103.