John Steven CLARK *v.* STATE of Arkansas

CR 91-120                                              824 S.W.2d 345

Supreme Court of Arkansas
Opinion delivered January 21, 1992

*John Wesley Hall, Jr.* and *Bill W. Bristow*, for appellant.

*Wilson, Engstrom, Corum & Dudley*, by: *Stephen Engstrom*, for appellee.

ROBERT R. WRIGHT, Special Chief Justice. Steve Clark, the appellant, was Attorney General of Arkansas from January, 1979 until November, 1990. On July 11, 1990, he was charged with theft by deception, under Ark. Code Ann. § 5-36-103 (1987), of over $2,500, which is a class B felony. He was tried over a period of nine days in October and November, 1990 and found guilty by a the jury of theft by deception of over $200, which is a

Class C felony.

This case arose out of investigative reporting that was likely spurred on by the "newspaper war" in Arkansas between the then existing newspapers, the *Arkansas Gazette* and the *Arkansas Democrat*. Reporters from those newspapers examined the spending practices of the constitutional officers of the state as contained in vouchers and records, including credit card charges, on file with the state. In examining Mr. Clark's supporting documentation, it was discovered that he had charged a great many meals to his state-issued Visa credit card and had listed the names of various people, many of them well-known to the public, who had dined with him on specified occasions. The newspapers listed the names of these people. At that point, many of these individuals began to call the newspapers stating either that they had never dined with Mr. Clark or that they had not dined with him at the time and place stated.

This led to an investigation by the Prosecuting Attorney of Pulaski County in cooperation with the investigative division of the Arkansas State Police. All of the financial records of the Attorney General's office were examined and this information was subsequently filed.

During the trial, the state called 144 witnesses, most of whom were these so-called "phantom diners." Although a limited number testified that they had dined with the Attorney General and that state business had been discussed, the vast majority testified that they had not dined with him. A few who had dined with him, particularly some female friends of his, testified that the occasion was purely social and that no state business of any kind was discussed.

A great many of these charges were paid for by the state based upon forms and credit card bills submitted by Mr. Clark. On several occasions, Attorney General Clark made trips either with his female friends or to see a female friend in such places as New Orleans, San Francisco, Atlanta and Hawaii. Some of these expenses were legitimate business expenses, as for example when he attended a national meeting of attorneys general. Much of the expense billed the state involved personal matters only, however, such as a wedding party in Hawaii where the Attorney General and his female companion served as witnesses to the wedding of

the former attorney general of Oklahoma.

Some of the bills for meals were of reasonable size, but some were large by anyone's standard. Many of them involved the extensive purchase of alcoholic beverages, including Dom Perignon. Tips to the waiter or waitress were also included. Mr. Clark's custom was to pay a small portion of most of these credit card charges and have the state pay the balance.

After this matter first came to light, and before criminal charges were filed, Mr. Clark made restitution to the state of $3,951.29 in connection with expenses of a personal nature. Whether any further amount is due is a matter which is not before the court.

As previously stated, Mr. Clark was convicted of theft by deception in circuit court. He subsequently resigned as attorney general.

We are called upon to determine whether the former attorney general is guilty of theft by deception as the jury found. On appeal, the attorneys for the appellant offer three arguments: (1) that appellant cannot be found guilty of theft by deception as a matter of law; (2) that prosecuting a constitutional officer for theft by deception for violating an appropriation act violates due process of law because appropriation acts contain no criminal penalty and criminalization of such an act would not provide fair notice to the public; and (3) that the trial court erred in not imposing a three year statute of limitations to the state's charges. We will take them in order although we view the first point as by far the major one to be considered.

The appellant argues that because he had a state-issued credit card, he could use it as he wished. Moreover, he argues that as a constitutional officer, he was not subject to the spending limitations imposed upon state employees in general.

The state law at the time all of this was taking place varied as it applied to the travel expenses and meals of constitutional officers and state employees. In fact, it stated: "The limitations of this subchapter relating to travel regulations shall not be applicable to the constitutional or elective officials and their employees . . . or official guests of the state." Ark. Code Ann. § 19-4-904(a) (1987). However, it goes on to say: "Personal reimbursement will

not be allowed to any state *official*, state employee, or any other person traveling on official business for expenses covering personal entertainment, tips . . . or other personal expenses, as those expenses shall be defined in the state travel regulations." Ark. Code Ann. § 19-4-904(b) (1987). (Emphasis added.).

Although part (b) does not contain the language contained in (a) referring to "constitutional or elective officials," it would not be necessary to refer to state officials otherwise because the term "state employee" would cover everyone else.

Moreover, the source of funding for payment of the Visa card charges came from the Maintenance and Operations (M and O) budget of the office of the attorney general. Certainly, it could never have been the intent of the legislature to permit that budget of between $600,000 and $700,000 per year to be used for personal expenditures. Otherwise, the attorney general, who admittedly has a very low salary for someone in his position, would be able to go out and make all sorts of personal purchases and charge them to the state. That argument, in fact, was advanced at the trial.

The appellant in this regard argues that "personal *reimbursement*" is not involved where the charges are made against a state-issued credit card. (Emphasis added.) However, the credit card bills were forwarded to Attorney General Clark, and he completed a state form with the credit card bill attached in order to have the state pay for all or most of the charges. Reimbursing Visa for the charges as opposed to sending a check to the attorney general is something that we regard as a difference without a distinction.

Appellant also urges that the statute quoted previously (§ 19-4-904) was obviously fatally flawed as demonstrated by the fact that the next time the General Assembly met, Act 768 of 1991 was passed. This Act stated in Section 2(A) that all constitutional officers and their employees "shall hereafter" file certain required documents in order to gain reimbursement. Moreover, it specifically prohibited expenditure of appropriated monies for personal use. The argument, in effect, is that the legislature would not have done this if it had not been necessary as a result of Mr. Clark's case.

We view Act 768 of 1991 as good legislation which sought to expand and make more specific existing law. There was never any intention on the part of the state to allow elected officials to invade maintenance and operating funds for personal use before the enactment of Act 768. The appropriations law prior to 1991 may have been barebones, but to argue that an elected official could covert large sums of appropriated money to personal use is beyond reason.

The appellant argues, based on *Phillips Petroleum Co.* v. *Heath*, 254 Ark. 847, 497 S.W.2d 30 (1973), that "we must presume that the General Assembly did not intend to purposelessly pass an act, so the act must be taken as indicative of a previous legislative intent that the oil burned by appellant in its recovery process be subject to the tax." 254 Ark. at 852-853; 497 S.W.2d at 33. That is the general rule. But it would be pure sophistry to assume that by use of a credit card, constitutional officers were free to charge all sorts of personal expenses to the "M and O" budget of the state. Otherwise, there would be nothing to prevent such officers from diverting such funds to the purchase of color TV's, motor boats, vacation homes and other such personal expenses. Even prior to the recent Act of the General Assembly, it would defy reason to assume that constitutional officers were given carte blanche authority to convert state funds to their personal use.

The Arkansas theft-by-deception statute provides, *inter alia*, that a person commits theft of property if he "knowingly obtains the property of another person, by deception . . . , with the purpose of depriving the owner thereof." Ark. Code Ann. § 5-36-103 (1987). The word "deception" is given several definitions, but the two that seem to apply here are: "creating a false impression" that the actor does not believe is true, and "failing to correct a false impression that the actor knows to be false" or that he knows will influence another to whom he stands in a fiduciary or confidential relationship.

The appellant argues that the listing of the "phantom diners" made no difference because the claims would have been paid without any names being provided. Why were the names of these diners provided at all, if that is the case? Several theories have been advanced, but they are speculative. Suffice it to say that

a number of these charges were so large that it would be impossible for one normal person or even a couple of people to consume that much food and alcoholic beverages. The listing of the names seems to have provided verification to the auditors that state business was involved. Moreover, the listing of these names would have prevented the auditors from questioning these charges during their annual audits of the M and O budget of the attorney general's office.

It is true, as appellant argues, that the misrepresentations must have been material and relied upon by the party deceived by them. But in this particular case, seeing those names undoubtedly allayed any questions which would otherwise have been raised by the auditors during the annual audit.

For his second point, appellant argues that prosecuting a constitutional officer for theft by deception for violating an appropriation act violates due process of law because there is no criminal penalty in an appropriation act. Art. 5, § 30 of the Arkansas Constitutional provides that appropriation acts can do nothing but appropriate funds for one specific subject.[1] But that does not mean that someone cannot be charged with theft by deception for improperly taking money from an account created by an appropriation. We find that point to be without merit.

The third point is the question of the statute of limitations. The general statue of limitations for theft is three years. Ark. Code Ann. § 5-1-109(b) (1987). However, the state argued that under Ark. Code Ann. § 5-1-109(b)(2), in regard to public servants, the appropriate statute of limitations was five years. For the five-year statute to apply, it would have to involve an "offense that is concealed involving a felonious conduct in office by a public servant."

The key word is "concealed." In keeping with our previous discussion, we are persuaded as was the jury that by use

---

[1] See also Art. 5, § 31: "No state tax shall be allowed, or appropriation of money made, except to raise means for the payment of the just debts of the State, [or] for defraying the necessary expenses of government. . . ."

Also, Art. 5, § 29: "No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill. . . ."

of the names of prominent figures on these expense forms, the appellant was attempting to conceal the truth, at least in many instances. Therefore, the five-year statute of limitations applies.

We hasten to add that it is without question that a state employee or state official may on occasion include charges that the state is not obliged to pay. Further, since the state has many thousands of these to deal with over the course of a year, the state may easily provide reimbursement by mistake for some expense that is inappropriate. Those types of situations should not be handled through criminal charges but through restitution by the state official or employee of the overpayment. Moreover, it is true that the normal action where the payment is disputed would be a civil suit based on repayment of an illegal exaction. *Munson* v. *Abbott*, 269 Ark. 441, 602 S.W.2d 649 (1980).

The case of Attorney General Clark, however, does not represent that type of situation. It illustrates a pattern of behavior over a number of years involving numerous and sometimes quite expensive charges on the Visa card in which personal expenses were clearly charged. The listing of all of these people, many of them quite prominent, who did not dine with Mr. Clark, and the statements of legitimate state concerns by Mr. Clark in connection with many of these occasions, when state business did not transpire, demonstrates a pattern of intentional deception and concealment. The fact that the appellant might simply write down some names of people who were there in the room, but with whom he had no business, and then list them as diners at his table to discuss legitimate state issues further demonstrates a pattern of deceit.

*****

In an entirely different context, Shakespeare wrote in *Julius Caesar*, Act I, Scene II:

"Men at some time are masters of their fates.
The fault, dear Brutus, is not in our stars,
But in ourselves . . . ."

Affirmed.

HOLT, C.J., and DUDLEY, HAYS, and NEWBERN, JJ., not participating.

Special Justice LONNIE BEARD joins.

Special Justices HOWARD BRILL and KENNETH GOULD concur.

HOWARD W. BRILL, Special Justice, concurring. I concur in the decision and in the opinion of Special Chief Justice Wright, but write to address several points raised in the briefs and in the oral arguments.

Steve Clark did not commit a crime when he accepted a state issued credit card. The card would have been a convenience, and perhaps a necessity for conducting the work of his office. He did not commit a crime when he offered his state issued credit card to restaurants and other vendors for personal expenses. Such a practice, whether commingled with legitimate business expenses or as a purely personal expense, was permitted by custom, and was not then barred by statute or administrative regulations. No crime was committed when the credit card issuer paid the restaurants and vendors. No crime was committed when the issuer billed Steve Clark for the expenses charged. No crime was committed when Steve Clark asked the State of Arkansas to pay a credit card bill which lacked documentation, names or details of the meetings or expenses. The law at that time did not require such itemization of constitutional officers. An occasional failure to promptly reimburse the state for personal expenses was not a crime.

Instead, the crime of theft by deception, Ark. Code Ann. § 5-36-103(a)(2), was committed when Steve Clark filed documents with the appropriate state agency requesting that the State of Arkansas pay the credit card bill, in whole or in part, representing those expenses as incurred in the course of official state business, while knowing that they were personal in nature.

The task of an appellate court is to review the evidence in the light most favorable to the appellee and to affirm the conviction if substantial evidence supports the jury's findings. *Findley* v. *State*, 307 Ark. 53, 818 S.W.2d 242 (1991). Substantial evidence is evidence of sufficient force and weight to permit the fact finder to draw a conclusion one way or the other. *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991). The evidence presented permitted the jury to conclude that his act of requesting state payment for

personal expenses was not a mere oversight, could not be justified as merely a good faith judgment call as to the distinction between governmental and personal expenses, and could not be described as trivial or insignificant in nature. Rather, substantial evidence supports a conclusion that the actions were intentional, systematic and flagrant.

Even if the requests for reimbursement had not mentioned companions, locations or conversational topics, requesting reimbursement for personal expenses would have violated the criminal code. As this Court stated in a taxpayer's lawsuit, public funds can never be appropriated for a private purpose. *Chandler* v. *Board of Trustees of Teacher Retirement System*, 236 Ark. 256, 365 S.W.2d 447(1963). Public funds are to be used for the "necessary expenses of government." Ark. Const., art. 5, § 31. The necessary corollary is that public funds when properly appropriated for a public purpose cannot be diverted and used for a private purpose.

The basic objective of statutory construction is to carry out the intention of the legislature. *Dollar* v. *State*, 287 Ark. 61, 697 S.W.2d 868 (1985). Although penal statutes are to be construed strictly in favor of the criminal defendant, the court may use common sense in determining the legislative intent. *State* v. *Joshua*, 307 Ark. 79, 818 S.W.2d 249 (1991). Criminal statutes are not to be so strictly construed as to exclude acts which would be included in the ordinary usage of the language. *Hice* v. *State*, 268 Ark. 57, 593 S.W.2d 169 (1980). Even penal statutes are not to be interpreted in a fashion that would reach absurd consequences that are clearly contrary to legislative intent. *Russell* v. *State*, 295 Ark. 619, 751 S.W.2d 334 (1988).

The contention of the appellant that funds appropriated by the General Assembly for the Maintenance and Operations of the Office of the Attorney General could be used by the Attorney General for his private personal expenses offends common sense, is constitutionally unsound at best, and would lead to an absurd conclusion.

"Public employment is a public trust." See Ark. Code Ann. § 19-11-703(a). In another context, the legislature has decreed general ethical standards for state officials and state employees: "Any attempt to realize personal gain through public employ-

ment by conduct inconsistent with the proper discharge of the employee's duties is a breach of a public trust." Ark. Code Ann. § 19-11-704(a)(1). Regardless of position, regardless of appointment, regardless of salary or the perceived inadequacy thereof, regardless of tenure or longevity of service, regardless of prestige, public officials, as well as public employees, are first and foremost public servants. See Ark. Code Ann. § 21-8-402(17). Public servants must never forget that they serve the public.

Public servants, both employees and officers, may be entrusted with the property, money, credit or image of the State. Whether a motor vehicle, office equipment, or financial resources, those assets are entrusted to the servant for a good limited purpose— to be used in furtherance of the public good and the commonweal.

The constitutional principle is clear and unyielding: the legislature may not appropriate government funds for private purposes, and officials may not utilize public funds or public property for private purposes.

KENNETH S. GOULD, Special Justice, concurring. I concur in the decision and join in the concurrence of Special Justice Brill. I write only to emphasize a significant factor in the sequence of events leading to appellant's commission of the crime of theft by deception.

As noted in Special Justice Brill's concurrence, the crime was committed when Steve Clark submitted documents to the Department of Finance and Administration requesting that the State of Arkansas issue a check to Simmons National Bank, the bank to which the credit card bill was due. When Steve Clark submitted the bill for payment, he did so on a form on which he, through his agent, a fiscal officer on his staff, certified the following:

> 1. That the amount set out in the request for payment was a legal account due by the State of Arkansas for services rendered to, or purchase made by, the Attorney General's Office;
>
> 2. That the bill had been determined to be correct;
>
> 3. That the bill was in compliance with applicable state

purchasing and fiscal laws and regulations; and

4. That substantiating evidence for the bill had been checked and found to agree with the bill.

The form on which this certification was made included a space titled "Description of Services or Purchase." In regard to the expenses that are the subject of the theft by deception charge, an entry was made in that space indicating that the expenses were for "OFFICIAL BUS MEALS & LODGING." An example of a completed request for payment form dated November 4, 1988, is incorporated as an exhibit to this opinion.

The record is clear that on numerous occasions Steve Clark's certification that the credit card charges were for official business meal expenses was false and deceptive. As a result of that certification, the State of Arkansas issued a check, based on a deceptively false statement, that it would not have issued had it known that the expenses were personal in nature. At the point the check was issued the State had been deceived, the deception "had pecuniary significance" and the crime of theft by deception was complete.

11/10/R

ATTORNEY GENERAL

89E-0379706
WARRANT NO.

Name and Address of Payee

SIMMONS FIRST NATIONAL BANK
PO BOX 6609
PINE BLUFF, AR 71611

89
FISCAL YEAR

Rhonda Richardson
Disbursing Officer

**TO THE AUDITOR OF STATE·**
As the bonded disbursing officer, or his authorized agent, of the state agency shown on this voucher, I hereby certify that the amount set out herein is a legal account due by the State of Arkansas for services rendered to, or purchases made by, this agency for which payment has not heretofore been made; that said account has been found correct with consideration given to all allowable discounts and other credits; that such claim is in compliance with the applicable state purchasing and fiscal laws and regulations on the subject, and is within the provisions and limitations of funds available to this agency. I further certify that all required supporting papers, attached to this voucher, have been furnished or certified by the payee, that detail tickets or other substantiating evidence have been checked by this agency and found to agree with the statements attached, and that all original papers and detail supporting evidence for this account are on file in this agency for audit purposes.

| DESCRIPTION OF SERVICES OR PURCHASES | | EXPENDITURE CODE | AMOUNT |
|---|---|---|---|
| EL | | | |
| OFFICIAL BUS MEALS & LODGING | | 25111 | 1,135.98 |
| OFFICIAL BUS MEALS & LODG | | 25121 | 2,601.61 |
| OFFIC BUS COM CARRIER | | 25321 | 110.56 |

| TRANS CODE | DATE | FUND CODE | AGENCY CODE | APPRO CODE | CHARACTER CODE | VOUCHER NO. | VOUCHER AMOUNT |
|---|---|---|---|---|---|---|---|
| | 11/04/88 | HSC | 053 | 004 | 02 | 01302 | 3,848.15 |

| T T | APP ALL | COST CENTER | | | | EXPEND CODE | ENC/COM NUMBER | F P | PROGRAM | | | GRANT ID | GRT YR | FED GRANT | | | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ACT. | SEC | UN | EL | | | | ST | DPT | AGY | | | FNC | SF | SSF | |
| A | 01 | 010 | | | | 25111 | | | | | | | | | | | 1,135.98 |
| A | 01 | 010 | | | | 25121 | | | | | | | | | | | 2,601.61 |
| A | 01 | 010 | | | | 25321 | | | | | | | | | | | 110.56 |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | 000161 | |

OFFICE COPY