365 S.W.2d 447 (1963)
Winston G. CHANDLER, Appellant,
v.
BOARD OF TRUSTEES OF the TEACHER RETIREMENT SYSTEM of the State of Arkansas, et al., Appellees.
No. 5-2922.
Supreme Court of Arkansas.
March 11, 1963.
Roy Finch, Jr., Little Rock, for appellant.
*448 Warren & Bullion, Little Rock, Bruce Bennett, Atty. Gen., by Jack L. Lessenberry, Asst. Atty. Gen., Little Rock, for appellees.
GEORGE ROSE SMITH, Justice.
This is a taxpayer's suit by which the appellant attacks the constitutionality of those statutes that permit the employees of the Arkansas Education Association (the AEA) and the Arkansas Teacher Association (the ATA) to participate in the State Teacher Retirement System. The defendants were the trustees of the Retirement System, the State Auditor, and the State Treasurer. The AEA and the ATA were permitted to intervene and become the real defendants. The chancellor found the statutes to be valid and accordingly dismissed the complaint. The principal issue is whether this use of state funds is for a public purpose.
The teacher retirement system was created by Act 266 of 1937. Under that act retirement benefits were available to public school teachers only. The plan was financed by deductions from the teachers' salaries and by equal matching contributions on the part of the State. By Act 80 of 1949 the employees of the AEA and of the ATA were permitted to participate in the plan, their contributions also being matched by the State. This arrangement was continued in force when the statutes were recodified by Act 93 of 1957. Ark.Stats.1947, § 80-1437 et seq. The funds of the retirement system are kept in various accounts in the State treasury, the State's annual contribution being transferred from the Public School Fund to the Employers Accumulation Account. Ark.Stats. § 80-1442.
The institution of this suit on February 14, 1961, seems to have been the immediate cause for an amendment to the statute. By Act 210 of 1961, approved one month after this proceeding was filed, the State discontinued its practice of using public funds to match the AEA and ATA contributions and required instead that the matching funds be provided by those organizations as a condition to their continued participation in the retirement system. Ark.Stats. § 80-1442 (6.3). In view of this amendment to the statute the appellant now makes two contentions: First, the State's former practice of using tax moneys to match the contributions of the AEA and ATA employees should be declared unconstitutional, and the State Treasurer should be directed to set the matter right by making the necessary book entries to transfer those matching funds (about $18,750) from the Employers Accumulation Account back to the Public School Fund. Secondly, the AEA and ATA employees should be declared to be ineligible to participate in the State Teacher Retirement System.
After studying the matter with much care we have concluded that the appellant is right in both his contentions.
The parties have argued the constitutional questions largely with reference to only two provisions in the State Constitutionthe privileges and immunities clause (Art. 2, § 18) and the illegal exactions clause (Art. 16, § 13). We have no hesitancy in considering the due process clause as well (Art. 2, § 8), for in a taxpayer's suit the plaintiff represents the citizens as a whole and cannot be permitted to waive contentions that should be asserted. See McCarroll v. Farrar, 199 Ark. 320, 134 S.W.2d 561, and Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72.
No principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose. A century ago the basic doctrine was simply stated in the leading case of Brodhead v. City of Milwaukee, 19 Wis. 624: "The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and *449 give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute."
Our own decisions are to the same effect. Since it is tacitly conceded in the case at bar that the controlling issue is that of public purpose, we think it necessary to quote from only one of our cases, Texarkana-Forest Park Paving etc. Dist. v. State, 189 Ark. 617, 74 S.W.2d 784: "The power to pay gratuities to individuals is denied to the Legislature generally by constitutional mandate and usually a gift of money to an individual would be an appropriation of public funds to private use, which cannot be justified in law."
The question before us centers upon the essential nature of the AEA and the ATA: Are these organizations public or private in character? The testimony relates almost wholly to the AEA, the ATA being its counterpart among the Negro teachers and actually having no employees at present who participate in the teacher retirement system.
The AEA is a voluntary association, organized as a nonprofit corporation and having as its members active and retired public school teachers, administrative and clerical employees of public school institutions, and a few others such as textbook publishing company representatives. The AEA is supported solely by the dues paid by its members. It receives no funds from the State and is unquestionably a private organization rather than an agency of the State.
It was shown by the testimony of the AEA's assistant executive secretary that some of the association's activities, such as its continuing effort to raise the standards and status of teaching as a profession, have furthered the cause of public education within the state. On the other hand, the bylaws of the association provide for a standing Legislative Committee, and the witness in effect conceded that the association, with the assistance of its members, engages in lobbying activity in support of its legislative program. Except for the fact that the members of the association are for the most part public employees, the testimony does not indicate that the AEA is in any sense more dedicated to public service than a bar association, a medical society, or any other voluntary professional organization.
We can reach no conclusion except that the use of tax moneys to provide a retirement income for AEA and ATA staff employees cannot be classified as an expenditure for a public purpose. A retirement allowance represents compensation paid to the recipient. Daggett v. St. Francis Levee Dist., 226 Ark. 545, 291 S.W.2d 254. The workers in question, however, are not employees of the State. There is no sound reason why their salaries should be supplemented by the taxpaying public. Although the cause of public education is undoubtedly furthered by the activities of the AEA members, there is no indication that the AEA employees devote their time to the pubic service. Even if such a showing had been made, the public services would still have been rendered by these people in the course of their work for a private employer, unsolicited by the State and affording no basis for a claim against the State.
Counsel for the intervenors seek to distinguish the AEA from a bar association or medical society on the ground that most of the AEA members are public employees. So they are, but there is no reason why public employees cannot form an association to advance their private interests. For example, the case of Potts v. Hay, 229 Ark. 830, 318 S.W.2d 826, was concerned with a labor union composed of members of the Little Rock police force. All the members of the union were public employees and, as such, could be provided with retirement pay at public expense. Adamson v. City of Little Rock, 199 Ark. 435, 134 S.W.2d 558. Yet it is obvious that the business agent of *450 the union would not be a public employee and could not be given a retirement allowance from the pockets of the municipal taxpayers. The staff members of the AEA are in no better position.
The intervenors' case is no stronger if their employees are considered simply as individuals, without reference to the identity of their employers. There is no constitutional justification for the State's conferring upon these workers, in private employment, benefits that are denied to others in similar circumstances. Of course these retirement allowances are not comparable to welfare grants, unemployment compensation, and other payments that are available to everyone falling within a broad classification and are justified by the State's power to relieve poverty and prevent the destitute from becoming public charges. The teacher retirement plan is not designed to take into account the financial condition of its beneficiaries.
Act 210 of 1961, requiring the AEA and the ATA to match their employees' contributions, does not remedy the situation. Tax moneys are still being devoted to a private purpose, because (a) the administrative expense of the system is in part borne by the State, and (b) the retirement allowances are life annuities, Ark.Stats. § 80-1445; so if an annuitant should live long enough to receive more in benefits than had been contributed to his account, the remaining annuity installments would have to be paid with public funds.
There is also proof in the record, and some discussion in the briefs, of a third organization, the Arkansas Athletic Association, which the statutes treat in the same manner as the AEA and the ATA. The complaint, however, sought no relief with respect to the AAA, nor is this organization a party to the case. Hence we express no opinion upon this phase of the case, for a declaratory judgment would not be binding upon an association which is not a party to the case. Laman v. Martin, 235 Ark. 938, 362 S.W.2d 711.
The decree must be reversed and the cause remanded for the entry of a judgment declaring to be unconstitutional and statutes which seek to permit the AEA and ATA employees to participate in the State Teacher Retirement System. In harmony with our holding in Young v. Clayton, 223 Ark. 1, 264 S.W.2d 41, the court will also direct the State Treasurer, to the extent that the funds have not been disbursed, to make the necessary entries to restore to the Public School Fund the unauthorized transfers to the Employers Accumulation Account.
Reversed.
HOLT, J., disqualified.