The Honorable Jerry E. Hinshaw State Representative WC 84 18804 Wheeler Road Springdale, AR 72764
Dear Representative Hinshaw:
This is in response to your request for an opinion on the following questions:
 1. Does the expenditure of money by an Arkansas city to provide fire and ambulance service to Oklahoma residents constitute an illegal exaction on Arkansas taxpayers?
 2. Would mutual aid agreements between the Arkansas city and the Oklahoma cities relieve the city of liability for illegal exaction?
 3. If such mutual aid agreements are in effect and the Arkansas city refuses to respond, would the Arkansas city be liable for legal action by the caller?
 4. In the previous question, if the request for service is from a resident outside the city limits of Siloam Springs, what would be the answer?
With regard to your first question, it is difficult to say, based upon these limited facts, whether the expenditure would constitute an illegal exaction. As a general matter, however, the use of city revenues to provide services to non-residents would, in my opinion, run afoul of the fundamental constitutional precept that monies arising from a tax levied for one purpose cannot be diverted to another. Ark. Const. art. 16, § 11; seealso generally Page v. Alexander, 206 Ark. 479,177 S.W.2d 415 (1943). The principle that public funds cannot be appropriated to a private purpose has been expressed by the Arkansas Supreme Court as follows:
 `The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute.' [Citation omitted.]
Chandler v. Bd. of Trustees of the Teacher Retirement System ofthe State of Arkansas, 236 Ark. 256, 258, 365 S.W.2d 447 (1963).
All of the particular facts must, of course, be considered when addressing an illegal exaction claim. If it is established that the city is in fact paying for services that are provided to non-residents, a taxpayers' illegal exaction claim could be brought as a means of challenging the misapplication of public funds.
In response to your second question, we cannot conclusively state that such an agreement would avoid any claim that public funds have been misapplied (illegal exaction). If the Arkansas city is in fact subsidizing services to Oklahoma residents, the illegal exaction claim would remain, notwithstanding the existence of an agreement. All of the particular facts, including the terms of any agreement would, however, have to be considered in order to fully assess the potential liability. If such an agreement exists, we suggest that the city consult its local counsel in this regard.
With regard to your last two questions, it must be noted that we are uncertain as to the basis for the legal action. While we cannot conceive of every possible legal action which might be brought under the attendant facts, local governmental immunity will generally prevail under Arkansas law in an action for damages based in tort. A.C.A. § 21-9-301. It seems unlikely that an individual cause of action in tort would lie, however, in the case of agreements between cities. Again, this is a matter that should be addressed by local counsel, with a view to all of the surrounding facts.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb