The Honorable Randy Laverty State Representative Post Office Box 303 Jasper, Arkansas 72641
Dear Representative Laverty:
This is in response to your request for clarification of a statement made in Op. Att'y Gen. 96-019. That opinion was issued in response to two questions relating to Act 846 of 1995. Act 846 amended A.C.A. §24-4-101(7)(B) (Supp. 1995) to provide, in essence, that a person eligible for or receiving benefits from the State Police Retirement System who has been elected sheriff of a county is an "employee" within the meaning of that word as used in provisions of the Arkansas Code relating to the Arkansas Public Employees' Retirement System ("APERS"). The act appears to have been prompted by the fact that, prior to its enactment, such a person was not an "employee," and therefore was not eligible to be a member of APERS due to the general rule, set forth in A.C.A. § 24-4-101(7)(B), that a person eligible to receive benefits under another retirement system supported by state funds is not an "employee," and the general rule implicit in A.C.A. §§ 24-4-301 to -303 (Repl. 1992) and 24-2-302(4) (Repl. 1992) that only "employees" are eligible for membership in APERS. One of the questions addressed in Op. Att'y Gen.96-019 was:
 Is it legal for a County to pay the back contributions for the County Sheriff in that County that wasn't covered by the Arkansas Public Employees Retirement System before Act 846 of 1995 became law (i.e. July 28, 1995) even if the money is appropriated by the Quorum Court?
The other question was whether the county was required to pay such contributions. It was, and is, my understanding that the sheriff at issue was not covered under APERS prior to the effective date of Act 846 because he receives retirement benefits from the State Police Retirement System.
In Op. Att'y Gen. 96-019, I concluded that Act 846, being substantive, amendatory legislation, should be interpreted to apply prospectively only. Because the statutes relating to APERS require counties to make contributions on behalf of their employees, and I could not locate any law requiring counties to make contributions with respect to periods during which persons employed by the county were not employees as defined by A.C.A. § 24-4-101(7), I concluded that the county at issue here is under no obligation to pay contributions with respect to the period of the sheriff's service occurring prior to the effective date of Act 846 (i.e., the period during which he was not an "employee" for purposes of A.C.A. § 24-4-101(7)).
In response to the question of whether it would be lawful for the county to pay such contributions notwithstanding the absence of any legal duty to do so, I stated:
 I have also been unable to locate any provision of law that expressly or, in my view, implicitly would permit a county to make contributions at this time with respect to a period of time during which an individual was not an employee for purposes of APERS, even though he later became an employee for that purpose and was an employee (in the ordinary sense of the word) during the period in question.
Op. Att'y Gen. 96-019 at 3 (footnote omitted; emphasis original).
I continued:
 Although no definitive answer is possible in this instance, it appears that a county's payment of such contributions without statutory authority could be subject to challenge as an illegal exaction under Ark. Const. art. 16, § 13, which has been given a broad interpretation in such "public funds" cases. See, e.g. Brewer v. Hawkins, 241 Ark. 460, 408 S.W.2d 492 (1966).
Op. Att'y Gen. 96-019 at 3 (footnote omitted).
Your question is:
 Is there an express or implicit provision of law that would prohibit a county to make contributions at this time with respect to a period of time during which an individual was not an employee for purposes of APERS, even though he later became an employee for that purpose and was an employee during the period in question?
Initially, I believe it is important to reconcile my statements in Op. Att'y Gen. 96-019 with the phrasing of one part of your question. Your question concludes with the phrase "and was an employee during the period in question," omitting the parenthetical phrase "(in the ordinary sense of the word)" that I used in Op. Att'y Gen. 96-019 in a similar sentence. It was and continues to be my understanding that the sheriff at issue was not an employee for purposes of APERS prior to the effective date of Act 846, even though he was, during that period, an "employee" of the county in the ordinary sense of the word.
In my opinion, no law of Arkansas expressly and specifically prohibits the county from making the contributions at issue here. There are simply no provisions of law addressing in particular the situation at hand.
As stated in Op. Att'y Gen. 96-019, however, it is my opinion that the county's payment of such contributions could be subject to challenge as an illegal exaction under Ark. Const. art. 16, § 13. The Supreme Court of Arkansas has stated:
 The illegal exaction provision and the cases interpreting it encompass two (2) different types or kinds of exactions. One type involves the prevention of a misapplication of public funds or the recovery of funds wrongly paid to a public official. See, e.g., Brewer v. Hawkins, 241 Ark. 460, 408 S.W.2d 492 (1966). We have given this type of exaction an expansive interpretation because taxpayers are the equitable owners of all funds collected by a government and, in most of the cases, are liable to replenish the funds exhausted by a misapplication or wrongful payment. Under these conditions taxpayers are entitled to broad relief. See, e.g., Samples v. Grady, 207 Ark. 724, 182 S.W.2d 875
(1944). For convenience, we label this type of case a "public funds" exaction case.
Pledger v. Featherlite Precast Corp., 308 Ark. 124, 128, 823 S.W.2d 852
(1992).
Further, it is my opinion that a misapplication of public funds may constitute a denial of the due process rights of taxpayers. Chandler v.Board of Trustees of Teacher Retirement System, 236 Ark. 256,365 S.W.2d 447 (1963).
Here, the county has no duty to make the payments at issue; neither is it expressly and specifically prohibited from making them. The question becomes, then, whether a payment of public funds that is neither required nor specifically prohibited constitutes a misapplication of public funds and therefore an illegal exaction or denial of due process. It is clear that there need not be an affirmative prohibition on the expenditure of public money for a given purpose in order for the expenditure to constitute a violation; rather, the mere absence of authority to make the expenditure suffices in certain cases. See, e.g., Hall v. Thompson,283 Ark. 26, 28, 669 S.W.2d 905 (1984); Chandler, 236 Ark. at 258. "[A]n illegal exaction . . . is [one] that either is not authorized by law or is contrary to law." Mackey v. McDonald, 255 Ark. 978, 985,501 S.W.2d 726 (1974). In my opinion, the legality of the contemplated payments depends upon whether they will be characterized by a court as being for a public purpose and producing a public benefit. Hall,283 Ark. 26; see also Clark v. State, 308 Ark. 84,92, 824 S.W.2d 345 (1992) (Brill, S.J. concurring). Although the courts will overrule abusive determinations, it is primarily the function of the legislature to determine what is a public purpose. Kerr v. East Central Arkansas Regional Housing Auth.,208 Ark. 625, 187 S.W.2d 198 (1945); Hogue v. The Housing Auth. of NorthLittle Rock, 201 Ark. 263, 144 S.W.2d 49 (1940).
In my opinion, A.C.A. § 24-4-101(7)(B) demonstrates a clear legislative determination that public funds generally may not be used to pay APERS contributions with respect to persons who are eligible to participate in state-supported retirement plans. To argue that public employers may make contributions with respect to individuals who are specifically excluded from the definition of "employees" is to ignore the overall statutory scheme, which limits membership in APERS to employees. See A.C.A. §§24-4-301 to -303 (Repl. 1992) and 24-2-302(4) (Repl. 1992). I perceive in the statutes no indication that the General Assembly intended to permit public employers, at their discretion, to make APERS contributions with respect to individuals who are not eligible for membership in APERS.
Act 846 effected a partial, but specific, reversal of the legislative determination discussed above with respect to State Police retirees who are elected county sheriffs. As discussed in Op. Att'y Gen. 96-019, however, Act 846 should be interpreted to apply prospectively only. It is my opinion, as a result, that the county has no more legal authority to make the contributions at issue than it would to make contributions with respect to any other individual who was not an "employee" for purposes of APERS during the period, including a person not employed, in any sense, by the county.
The Chandler case, cited above, is instructive. The case involved a challenge to payments by the state to the State Teacher Retirement System for the benefit of employees of certain private organizations interested in the public schools. The payments had been specifically authorized by statute, but the court ruled them unlawful, stating:
 No principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose.
Chandler, 236 Ark. at 258.
The court continued, quoting from an earlier case, with respect to one type of expenditure that is deemed to be for a private purpose:
 The power to pay gratuities to individuals is denied to the Legislature generally by constitutional mandate, and usually a gift of money to an individual would be an appropriation of public funds to a private use, which cannot be justified in law.
Chandler, 236 Ark. at 258, quoting Texarkana-Forest Park Paving, Water,Sewer and Gas Dist. No. 1 v. State, 189 Ark. 617, 623, 74 S.W.2d 784
(1934).
While the situation at hand can be distinguished from Chandler in that the individuals there were not public employees for any purpose, I believe the distinction to be without any substantive difference. The legislature expressly declared that individuals such as the sheriff at issue were not to be deemed employees for purposes of APERS. While that determination was reversed by the passage of Act 846, the General Assembly's refusal or inadvertent failure to make Act 846 apply retroactively left in place that prior determination for purposes of the period of time at issue. Any payment by the county for such period would, in my opinion, probably constitute a gratuity to the sheriff, there being no requirement to make such payment and there existing, with respect to such period, an express provision of law that such a person was not an employee for purposes of APERS.
In sum, while a conclusive determination is not possible, it is my opinion that the county's payment of APERS contributions for the behalf of the sheriff with respect to a period of time prior to the effective date of Act 846 likely would be held to be an illegal exaction or a denial of due process.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh