The Honorable David Choate State Representative 709 N. Main Street Beebe, Arkansas 72012-2821
Dear Representative Choate:
This is in response to your request made during your term of office for an opinion on three questions concerning the interaction of the "Arkansas Waterways Commission" ("AWC"), created at A.C.A. § 15-23-201 (Supp. 1997), and the private nonprofit entity, the "Arkansas Waterways Association" or ("AWA".) You note that the former entity is a statutorily created agency of the State of Arkansas whose members are appointed by the Governor. You note that the duties of the AWC include "studying and coordinating efforts to promote the development of the navigable stream areas of the State for water transportation purposes and to encourage and coordinate the development or river port and harbor facilities." The latter entity (the "AWA") is a private one, "[e]vidently funded through membership dues and contributions from interested parties." It "has traditionally been an advocate for the development of Arkansas Waterways and for the promotion of the waterborne transportation in the State." You pose three questions regarding the interaction of these two entities, as follows:
 1. Can the AWA hire and pay the salary of a registered lobbyist to lobby the Arkansas Legislature and the Governor on behalf of the AWC and regarding the legislative proposals of the AWC? If so, can the AWA authorize the Director of the AWC to interview, negotiate salary with, hire, and subsequently direct the activities of said lobbyist?
 2. Can the Director or other employees of the AWC perform contract labor for, serve as staff for, or receive payment from the AWA or any of its members? If so, to what extent?
 3. Can the offices of the AWC be used to house records for the AWA? Can those offices be used to accept or send telephone, fax or electronic mail messages on behalf of the AWA?
It is my opinion that the answer to the first part of your first question is "yes." The AWA, as a private entity, is free to hire a lobbyist with its private funds, and to lobby in favor of whatever proposals it favors, so long as this activity is consistent with the federal and/or state law under which the AWA is incorporated, and its by-laws, and compliance is had with all the relevant laws regarding the registration and reporting of the lobbying activity.
The second part of your first question is more problematic. In my opinion, the private provision of an employee by the AWA to the AWC to perform lobbying activities creates practical problems, and might be deemed unlawful by a court presented with the question. I have found no controlling case law or statute on this question, however. The AWC is invested with broad powers (see A.C.A. § 15-23-202) which could conceivably include the power to lobby. The direction of, and use of private employees in this regard, however, is not contemplated. Section15-23-203 of the Arkansas Code empowers the Commission to employ an executive director and "such other employees as authorized by law" and to "fix the salaries thereof within the limitations of funds appropriated therefor. . . ." The current appropriation act for the Commission authorizes a director, a waterways assistant director/communications, and an administrative assistant. See Acts 1997, No. 68, Section 1. No separate position for lobbying is authorized. It has been stated that statutorily created entities have only such power and authority as is expressly granted by law or necessarily implied therefrom in order to carry out an expressly granted power. Smith v. Refunding Board,192 Ark. 145, 90 S.W.2d 494 (1936). See also Op. Att'y Gen. Fla. 97-58 (Health and Human Services Board may not hire a lobbyist or have a private entity use its funds to hire such an individual to advocate on the Board's behalf). In my opinion therefore, the private provision of a lobbyist, whose activities and salary are controlled by the Commission, might be held the indirect accomplishment of what is not authorized directly.
In addition, the power of the AWC to negotiate salary with, hire, and direct the activities of the lobbyist might lead to allegations that the lobbyist is indeed an "employee" or at least a "loaned employee" of the Commission, although his or her salary would be separately and privately paid. Cf. Carter v. Cash, 312 Ark. 41, 847 S.W.2d 18 (1993) (employee or loaned employee relationship existed between worker and construction company although his salary was paid by another). The most important factor in determining an employment relationship is the right to control the activities of the employee, not necessarily the payment of salary.Id. In addition to the Commission's restricted authority to hire "employees" discussed above, a loaned employment relationship of the nature you describe could give rise to a number of practical legal problems, including fiscal and liability issues. See, e.g., Arkansas Constitution art. 16, § 4 (the salaries of the clerks and employees of the different departments of the state shall be fixed by law); and A.C.A. § 21-8-801 (no public servant shall receive compensation other than income and benefits from the governmental body to which he or she is duly entitled).
Again, I have found no discrete case or statute that expressly prohibits the type of loaned employment relationship you describe. In my opinion, however, the law does not expressly authorize an arrangement of this nature, and its implementation could lead to a number of legal and practical problems.
In response to your second question, several provisions of the Arkansas ethics laws may, depending upon the facts, proscribe the conduct you describe. Section 21-8-801 of the Arkansas Code provides in pertinent part that:
 No public servant shall: (1) Receive a gift or compensation . . . other than income and benefits from the governmental body to which he or she is duly entitled, for the performance of the duties and responsibilities of his or her office or position.
In addition, section 21-8-304 and Section 21-8-1002 of the Arkansas Code provide that public officials, state employees and members of state boards and commissions may not use their official positions to secure special privileges or exemption for themselves that are not available to others.
Although it will be a question of fact in each instance as to whether these provisions are violated, the employment of, contracting with, or payment to Commission employees by the AWA may implicate these provisions. Consultation with the Arkansas Ethics Commission may be advisable in this regard.
It is my opinion that the answer to your third question is in all likelihood "no." Such an arrangement implicates the private use of public facilities, and thus the "public purpose" doctrine, and the "illegal exaction" provision of the Arkansas Constitution. See Arkansas Constitution, art. 16, § 13. It has been held in analogous contexts that this provision of the Arkansas Constitution prohibits the private use of public equipment and property. See, e.g., Pogue v. Cooper, 284 Ark. 105,679 S.W.2d 207 (1984); Cunningham v. Stockton, Judge, 235 Ark. 345,359 S.W.2d 808 (1962); and Needham v. Garner, County Judge, 233 Ark. 1006,350 S.W.2d 194 (1961). See also Chandler v. Board of Trustees of theTeacher Retirement System, 236 Ark. 256, 365 S.W.2d 447 (1963) (act that permitted members of private teachers' organization to participate in public retirement system was unconstitutional as appropriation of tax moneys to a private purpose).
The AWA's use, therefore, of the AWC's public facilities, phone lines, fax machines and computers gives rise to constitutional concerns. The Oklahoma Attorney General reached a similar conclusion in opining that the Oklahoma Wheat Utilization, Research and Market Development Commission could not lawfully provide office space, secretarial or bookkeeping services for the Oklahoma Wheat Growers Association. See
14 Okla. Op. Att'y. Gen. 166, (No. 82-71) (stating that "[u]nder the limitations imposed by [Oklahoma] constitutional provisions, we can only conclude that for any public body to provide office space and secretarial and bookkeeping services for a private organization or association would constitute a use of public funds for a nonpublic use." Id. at 4. It is therefore my opinion that the answer to your third question is most likely "no."
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh