The Honorable Marvin Steele State Representative 912 W. Barton Avenue West Memphis, AR 72301-2803
Dear Representative Steele:
I am writing in response to your request for my opinion on the following question:
 Can a city spend proceeds from its hotel, motel and restaurant tax in support of activities that can be considered lobbying, specifically:
 1. Can a city use city funds from the hamburger tax to participate in the Arkansas Partnership, an organization of economic development agencies and chambers of commerce among whose activities is lobbying legislators?
 2. Can a city use funds from the hamburger tax to pay its share of a hospitality event for legislators?
For the sake of convenience, I will address the subparts of your question separately.
RESPONSE
I cannot answer your first question, which raises factual issues regarding the scope of the city's "participation" and the nature of the activities conducted by the Arkansas Partnership. As a general proposition, I believe the city could expend hamburger tax revenues on the Arkansas Partnership, including for the purpose of lobbying, so long as the expenditures served a public purpose and the ends recited in A.C.A. § 26-75-606. With respect to your second question, I believe the city's advertising and promotion committee could likewise devote hamburger tax revenues to "a hospitality event for legislators" so long as the committee reasonably concluded the event served the ends recited in A.C.A. § 26-75-606.
Question 1: Can a city use city funds from the hamburger tax toparticipate in the Arkansas Partnership, an organization of economicdevelopment agencies and chambers of commerce among whose activities islobbying legislators?
At issue is whether the use of tax revenues you have described is authorized under the Advertising and Promotion Commission Act, A.C.A. §§26-75-601 through — 608 (Repl. 1997), which enables cities to impose what is commonly known as the "hamburger tax." Taxes levied pursuant to this or any other specific legislation may be used only for the recited purposes. Bell v. Crawford County, 287 Ark. 251, 697 S.W.2d 910, cert. denied 106 S.Ct. 1638 (1985). The permissible uses of revenues raised by the hamburger tax are set forth at A.C.A. § 26-75-606:
 (a)(1) All funds credited to the city advertising and promotion fund pursuant to this subchapter shall be used for advertising and promoting the city and its environs or for the construction, reconstruction, extension, equipment, improvement, maintenance, repair, and operation of a convention center or for the operation of tourist promotion facilities in the city, and facilities necessary for, supporting, or otherwise pertaining to, a convention center, or for the payment of the principal of, interest on, and fees and expenses in connection with, bonds as provided in this subchapter in the manner as shall be determined by the city advertising and promotion commission. The city advertising and promotion commission may engage such personnel and agencies and incur such administrative costs that it deems necessary to conduct its business.
 (2) The commission is the body that determines the use of the city advertising and promotion fund. Pursuant to this section, if the commission determines that funding of the arts is necessary for or supporting of its city's advertising and promotion endeavors, it can use its funds derived from the hotel and restaurant tax.
Subsection 26-75-606(c)(2)(B) prohibits using hamburger tax revenues "[f]or the costs associated with the general operation of the city." Subsection 26-75-606(c)(2)(C) further prohibits using the funds "[f]or general subsidy of any civic groups or the chamber of commerce."
Your request is unclear in several respects. First, you inquire whether the city can "spend proceeds" and "use funds from the hamburger tax to participate in the Arkansas Partnership" without indicating what form that participation will take. As discussed below, the implications of simply giving money to this organization might be different than the implications of "participating" in some other manner. Moreover, although you appear primarily concerned with the consequences of lobbying, your question can also be read as asking whether the Arkansas Partnership's other activities might be funded with hamburger tax revenues.
If you are asking me to opine on the Arkansas Partnership's general activities, I must respectfully decline. Determining whether participating in the Arkansas Partnership would constitute a permissible use of hamburger tax funds will necessarily entail a factual inquiry of the sort I am neither equipped nor authorized to undertake. Moreover, although you specify in your question that the membership of the Arkansas Partnership is comprised of "economic development agencies and chambers of commerce," you do not indicate what activities the Arkansas Partnership itself conducts — information that will be crucial in determining whether the city is authorized to "participate" using public funds. It may well be that these activities qualify, say, as "advertising and promoting the city and its environs" or as "tourist promotion," but one cannot draw that conclusion without considering all of the facts. As reflected in the above recited statute, the task of making this determination should fall upon the city's advertising and promotion commission, which has sole authority over the expenditure of hamburger tax funds. See Ark. Op. Att'y Gen. No. 97-259 (opining that the commission's determinations do not require city council approval). On three separate occasions, my predecessor has opined that a commission's determination pursuant to this explicitly granted authority will be accorded significant weight if challenged. See Ark. Ops. Att'y Gen. Nos.96-383, 96-050 and 92-064.
Before addressing the question of lobbying, I should identify several issues of potential concern. First, as noted above, A.C.A. §26-75-606(c)(2)(C) expressly prohibits subsidizing "any civic groups or the chamber of commerce." Assuming the city's participation in the Arkansas Partnership consists of no more than contributing funds to be used by the chambers of commerce in pursuit of their standard operations, a finder of fact might well conclude that the grant amounts to a gift in violation of the statute. Moreover, any such grant might further offend Ark. Const. art. XII, § 5, which provides: "No county, city, town or other municipal [corporation] shall . . . appropriate money for, or loan its credit to, any corporation, association, institution or individual." I am enclosing for your information Ark. Op. Att'y Gen. No.1999-408, which discusses in detail the scope of this constitutional proscription. See also Ark. Op. Att'y Gen. No. 92-140 (opinion that an advertising and promotion commission's grants of funds to private entities for expenditure as they see fit would violate Ark. Const. art.XII, § 5, and A.C.A. §§ 26-75-606(a)(3)(A)(iii) and (c)(1)(C)). However, you should be aware that by statute the advertising and promotion commission may contract with civic groups and chambers of commerce "to provide to the commission actual services that are connected with tourism events or conventions." A.C.A. § 26-75-606(c)(3).
Specifically with respect to the issue of lobbying, I assume your concern is that the city might be restricted from engaging in what the courts generally refer to as "government speech" — i.e., speech that clearly advocates a particular position on a matter of public debate. My immediate predecessor and I have previously addressed this issue in the enclosed Ark. Ops. Att'y Gen. Nos. 98-204 and 2000-162. As reflected in these opinions, the propriety of government speech normally becomes an issue in the context of election campaigns, in which the government is largely precluded from espousing partisan positions. However, the Supreme Court has recognized that government will necessarily commit itself to certain positions in the course of fulfilling its functions. As one commentator has noted: "Unless government is taking a position with respect to religion, where the special strictures of the establishment clause come into play, courts consider government communication to be a function of the state that is not contained by the limitation of the first amendment." F. Schauer, Is Government Speech a Problem?, 35 Stan. Law Rev. 373, 376 (1983). The Supreme Court has analyzed this issue as follows:
 Government officials are expected as a part of the democratic process to represent and to espouse the views of a majority of their constituents. With countless advocates outside of the government seeking to influence its policy, it would be ironic if those charged with making governmental decisions were not free to speak themselves in the process.
Keller v. State Bar of California, 496 U.S. 1, 12 (1990). The Court has recently stressed that government speech is most often a matter of merely political, as opposed to constitutional, concern:
 When the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position.
Board of Regents of University of Wisconsin System v. Southworth,529 U.S. 217, 234 (2000).
I recognize that there is a certain tension between, on the one hand, the notion that government must adopt and promote positions in order to function and, on the other, the idea that it must avoid being tendentious in addressing ballot initiatives and referenda. Without presuming to resolve this tension, I will simply note that the Supreme Court has been particularly jealous in guarding the public's right to disinterested government information on matters scheduled for an impending public vote, see enclosed Ark. Ops. Att'y Gen. Nos. 98-204 and 2000-162, while at the same time recognizing that a government by definition must pursue an agenda that will inevitably carry some political charge. The Court has made clear that it will not brook any governmental use of taxpayer funds to present the public with "information" that amounts to no more than arguments supporting only one side of a ballot initiative or referendum. However, this is not to say that the government must be neutral on issues of public concern. It is in the very nature of a political administration to take and advance positions, and doing so will necessarily entail attempting to influence legislation.
Finally, I should note the possible application of the "public purpose" doctrine, which my predecessor discussed as follows in Ark. Op. Att'y Gen. No. 91-410:
 [Th]e broad, but often difficult to define "public purpose" doctrine . . . generally requires that the expenditure of public funds be for a "public purpose." See generally Chandler v. Board of Trustees of the Teacher Retirement System of the State of Arkansas, 236 Ark. 256, 365 S.W.2d 497 (1963), and cf. specifically South Carolina Op. Att'y. Gen. issued April 24, 1987. It has been stated as regards this doctrine that "[n]o expenditure can be allowed legally except in a clear case where it appears that the welfare of the community and its inhabitants is involved and direct benefit results to the public." McQuillin, Municipal Corporations, § 12, 190. The determination of whether a particular expenditure is for a "public purpose" is to be made by the legislature. Although ultimately the propriety of a particular expenditure is resolved by the judiciary, great weight must be given legislative declarations of public purposes. Turner v. Woodruff, 286 Ark. 66, 698 S.W.2d 527 (1985).
In the present case, I believe the only uses to which hamburger tax funds can be put are those expressly recited in A.C.A. § 26-75-606 — uses that presumptively fulfill a "public purpose" under the authorities recited above. In my opinion, given the legislature's restriction of these funds, it would be impermissible to put the retained funds to any divergent use, whether public or private. In short, I believe the city might use hamburger tax revenues to participate in "lobbying," assuming that the lobbying serves a public purpose and relates to matters that fall within the scope of the statute authorizing the hotel, motel and restaurant tax. I believe lobbying is impermissible if it primarily inures to the benefit of individuals. Determining whether any given lobbying activity is permissible will entail conducting a factual inquiry I am neither authorized nor equipped to undertake.
Question 2: Can a city use funds from the hamburger tax to pay its shareof a hospitality event for legislators?
In my opinion, the answer to this question would depend on the nature of the "hospitality event." If the event were designed primarily to influence legislators to support a position that the advertising and promotion commission had reasonably adopted in pursuit of its statutory mission, I believe the expenditure would be warranted. However, determining whether an expenditure qualifies as legitimate under this standard would entail engaging in a factual inquiry I am unauthorized to conduct. The focus of this factual inquiry would be on whether the expenditure is justified in terms of the statutory restrictions, the public purpose doctrine and the proscription against giving away public funds set forth at Ark. Const. art. XII, § 5.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosures