The Honorable R. Gunner DeLay Prosecuting Attorney Twelfth Judicial District Sebastian County Courthouse 36 South 6th Street Fort Smith, AR 72901
Dear Mr. DeLay:
I am writing in response to your request for my opinion on the following questions concerning one of the cities in your jurisdiction:
Is it against Arkansas law or the State Constitution for a mayor to expend city funds to upgrade a laptop computer that is used for official city business as well as personal use?
Does it make any difference if the computer is donated to the city either before, or after, the upgrades have been made?
You report that "[t]he computer was owned by the mayor prior to his taking office and the upgrades costs [sic] less than $500."
RESPONSE
In my opinion, the expenditure described by your first question could be suspect under various provisions of law, with the issue likely turning on the specific circumstances surrounding the "personal use" of the computer. If the question contemplates the use of city funds to upgrade a privately-owned computer, such expenditure in my opinion would be unlawful unless it was pursuant to a valid contractual agreement that primarily furthered a legitimate public purpose. I lack sufficient information to analyze this issue in further detail, and cannot in any event undertake the necessary factual inquiry to definitively decide the matter. I can only analyze the relevant legal issues. With regard to your second question, if the computer was donated to the city before the upgrades were made, and the "personal use" was only incidental to a public purpose, then in my opinion the upgrade expenditure would likely be permissible as long as it was not arbitrary or unreasonable. If, on the other hand, the computer was privately owned when the upgrades were made, then in my opinion it would only be by virtue of some contractual arrangement that such an expenditure of city funds might be justified.
Your questions implicate several provisions of law, including A.C.A. § 14-58-303, the common law "public purpose doctrine," and Arkansas Constitution, Article 12, Section 5 and Article 16, Section 13.
A.C.A. § 14-58-303
The mayor of a first class city is authorized by A.C.A. § 14-58-303(a) (Supp. 2005) "to make purchases of all supplies . . . and other things requisite for public purposes in and for the city[;]" and he or she may "make all necessary contracts . . . in carrying out any work or undertaking of a public nature in the city." (Emphasis added). This authorization is consistent in all respects with the common law "public purpose" doctrine, which restricts public funds to public purposes, see Chandler v. Board of Trustees, 236 Ark. 256, 365 S.W.2d 447 (1963), as well as the constitutional proscription against the appropriation of city funds "for . . . any corporation, association, institution or individual." Ark. Const. art. 12, § 5.
The "public purpose" doctrine
This doctrine was described in Chandler, supra, as follows:
No principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose. A century ago the basic doctrine was simply stated in the leading case of Brodhead v. City of Milwaukee, 19 Wis. 624: "The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute."
236 Ark. at 258, quoting Brodhead v. City of Milwaukee, 19 Wis. 624. See also Holiday Island Suburban Improvement District #1 v. Williams,295 Ark. 442, 446, 749 S.W.2d 314 (1988) ("[I]t is clear that ad valorem taxes could not be lawfully imposed upon the general public to maintain the cost of construction or maintenance of facilities used for private purposes.") See also generally Rubin, Constitutional Aid Limitation Provisions and the Public Purpose Doctrine, 12 St. Louis U. Pub.L. Rev. 143 (1993).
It has been stated as regards this doctrine that `"[n]o expenditure can be allowed legally except in a clear case where it appears that the welfare of the community and its inhabitants is involved and direct benefit results to the public."` Ark. Op. Att'y Gen. 91-410 (quoting McQuillin, Municipal Corporations, § 12, 190). "Public purpose" in the situation at hand involving city-funded computer upgrades should therefore be read as a "public purpose" that directly benefits the inhabitants of the city.
Arkansas Constitution Article 12, Section 5
This constitutional provision specifically prohibits the appropriation of city funds to private individuals. It provides:
§ 5. Political subdivisions not to become stockholders in or lend credit
No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
Ark. Const. art. 12, § 5.
This proscription memorializes with respect to local government the general principle that no government can use public resources for private purposes. See, e.g., Pogue v. Cooper, 284 Ark. 105, 679 S.W.2d 207
(1984); Cunningham v. Stockton, Judge, 235 Ark. 345, 359 S.W.2d 808
(1962); Needham v. Garner, County Judge, 233 Ark. 1006, 350 S.W.2d 194
(1961). See also Ark. Ops. Att'y Gen. Nos. 2000-222 (expending city funds to maintain a road that is accessible only to the residents of a "gated community" would run afoul of Ark. Const. art. 12, § 5) and 2000-243 (providing a private entity free county gravel, as well as access to county equipment and employees, offends art. 12, § 5). My immediate predecessor also observed as follows regarding art. 12, § 5:
Because of its broad proscription against grants or loans "to any corporation, association, institution, or individual," Article 12, § 5 would appear to bar any and all donations to any entity or person, including a private, nonprofit corporation, regardless of how exalted its purpose.
Op. Att'y Gen. 2005-205 (emphasis added). See also Halbert v. Helena-West Helena Industrial Development Corp., 226 Ark. 620, 625,291 S.W.2d 802 (1956) (striking down a municipality's contribution to a private, non-profit corporation, regardless of whether the corporation served a "public purpose.")
Arkansas Constitution Article 16, Section 13
Any use of public property or funds in derogation of art. 12, § 5 or the "public purpose" doctrine would invite challenge under Arkansas Constitution Article 16, Section 13. This constitutional provision authorizes citizens of counties, cities and towns to institute suit to protect inhabitants from the enforcement of "illegal exactions" The Arkansas Supreme Court has recognized that an "illegal exaction," within the meaning of art. 16, § 13, can take two forms: (1) a misapplication of public resources; and (2) a wrongful taxation. See Williams v. City of Fayetteville, 348 Ark. 768, 76 S.W.3d 235 (2002); Villines v. Harris,340 Ark. 319, 11 S.W.3d 516 (2000). The use of public resources for a private purpose would constitute a misapplication of public resources.
Depending upon the particular circumstances, such conduct might also violate the common law prohibition against conflicts of interest, which is founded upon the principle that "a public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest . . . ." Ark. Op. Att'y Gen. 2006-137. The Arkansas Code contains a similar conflict of interest provision applicable to public officials and state employees:
No public official or state employee shall use or attempt to use his or her official position to secure special privileges or exemption for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship, that is not available to others, except as may be otherwise provided by law.
A.C.A. § 21-8-304(a) (Repl. 2004).
While the circumstances would probably have to be particularly egregious to evidence criminal conduct, the application of public funds to a private purpose could conceivably implicate the crime of theft under the Arkansas Criminal Code. A.C.A. § 5-36-102; see Sitz v. State,23 Ark. App. 126, 743 S.W.2d 18 (1988); State v. Reeves, 264 Ark. 622,574 S.W.2d 647 (1978). The elements of theft of property are set forth at A.C.A. § 5-36-103:
(a) A person commits theft of property if he:
(1) Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner thereof; or
(2) Knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof.
Additionally, in at least one jurisdiction, the misappropriation of public property has been deemed to amount to embezzlement. People v. Redondo, 24 Cal.Rptr.2d 143 (Cal App. 1993) (deputy sheriff's use of police vehicle to steal lawn mower amounted to embezzlement), citing People v. Harby, 125 P.2d 874 (Cal.App. 1942) (councilperson's use of city-owned vehicle to take 4,000-mile pleasure trip amounted to embezzlement). However, the challenged conduct in these cases was especially egregious. As one of my predecessors noted, the usual course in an instance where a public official has improperly channeled public property to a private purpose has been to seek recovery in a civil action alleging an illegal exaction in violation of Ark. Const. art. 16, § 13. Ark. Op. Att'y Gen. 2000-243.
The foregoing discussion outlines the general legal principles that bear on your questions concerning a mayor's expenditure of city funds to upgrade a laptop computer. It is difficult to draw any preliminary conclusions, let alone make any conclusive determination in response to your first question, without knowing the precise circumstances surrounding the "personal use" of the computer. As indicated above, it is well established that a county, city, or town generally cannot make improvements to private property. See Ark. Op. Att'y Gen. 99-331. Such a use of public funds offends many of the legal provisions discussed above. Most particularly, however, the use of public funds to improve private property ordinarily offends Ark. Const. art. 12, § 5's specific proscription against the appropriation of money to a corporation or an individual. As noted above with respect to art. 12, § 5, this provision bars any contribution to a private entity or person, no matter how exalted the motive for doing so.
It should nevertheless be noted that while cities cannot gratuitously appropriate funds for private entities or individuals, they are not prohibited from entering into contracts that are supported by adequate consideration and that serve a legitimate public purpose. See Ark. Op. Att'y Gen. 2003-047 (and opinions cited therein). One of my predecessors offered the following analysis of this issue:
[N]othing in the constitution precludes the county from contracting with a private nonprofit charity, so long as the contract is supported by adequate consideration and serves a proper governmental end. Cities and counties clearly can enter into contracts that are supported by valid consideration. See Ops. Att'y Gen. Nos. 1998-025 and 97-250; A.C.A. §14-54-101(2); City of Ft. Smith v. Bates, 260 Ark. 777, 544 S.W.2d 525
(1976); City of Harrison v. Boone County, 238 Ark. 113, 378 S.W.2d 665
(1964). Moreover, this authority includes the power to contract with nonprofit organizations. See Woodruff v. Shockey, 297 Ark. 595,764 S.W.2d 431 (1989). Such contracts have been upheld as not being in violation of Article 12, § 5. See Arkansas Uniform Linen Supply v. Institutional Services Corp., 287 Ark. 370, 700 S.W.2d 358 (1985). . . . [T]he decision to undertake such a contract would necessarily be based on factual considerations I am unprepared and unauthorized to review. I advise you to consult with local counsel regarding such matters.
Op. Att'y Gen. 99-408.
Consistent with these observations, this office has previously opined that a municipality may never transfer public funds to a private, nonprofit corporation, no matter how exalted the purpose, unless the transfer is pursuant to the terms of a valid contract. See Ops. Att'y Gen. Nos. 2006-207 (transfer of "hamburger tax" funds to a private non-profit for the purchase of a tourism promotion facility, if outside the terms of a contract, would violate art. 12, § 5, even if the transfer would benefit the public); 2005-205 (city cannot donate funds to a private non-profit that serves domestic abuse victims; but assuming the need exists, the city may enter into a contract to fulfill this need, subject to the condition that the consideration it pays under the contract must be reasonable); 2004-319 (city may lease a privately-owned building for a public library and make improvements to the building under the lease, assuming the reasonableness of the total expenditures.)
I agree in all respects with my predecessors' analyses. Accordingly, if your first question contemplates the use of city funds to upgrade a computer that is privately-owned, such expenditure would be unlawful, in my opinion, absent some valid contractual arrangement that serves a proper governmental end. Because your question pertains to a mayor, reference should be made in this regard to A.C.A. § 14-42-107(b)(1) (Supp. 2003), which governs the issue of city council members having an interest in contracts with the city:
No alderman, council member, official, or municipal employee shall be interested, directly or indirectly, in the profits of any contract for furnishing supplies, equipment, or services to the municipality unless the governing body of the city has enacted an ordinance specifically permitting aldermen, council members, officials, or municipal employees to conduct business with the city and prescribing the extent of this authority.
A.C.A. § 14-42-107(b)(1) (Supp. 2005).
I lack sufficient information to further analyze any issues that might arise concerning a contractual arrangement with respect to the computer in question; and I cannot in any event undertake the necessary factual inquiry to definitively decide any such issues. I will note generally that municipal officials are granted a significant measure of discretion in determining whether the taxpaying public directly benefits from the expenditure of public funds such that the expenditure satisfies the public purpose doctrine. It has been stated that:
The court will give weight to a legislative determination of what is a municipal purpose. It has been laid down as a general rule that the question of whether the performance of an act or the accomplishment of a specific purpose constitutes a "public purpose" for which municipal funds may be lawfully disbursed rests in the judgment of the municipal authorities, and the courts will not assume to substitute their judgment for that of the authorities unless the latter's exercise of judgment or discretion is shown to have been unquestionably abused.
64A C.J.S. Municipal Corporations, § 1573(b), at 99 (footnotes omitted). Accord Turner v. Woodruff, 286 Ark. 66, 689 S.W.2d 527 (1985).
It nevertheless bears repeating that the appropriation of public funds for a private corporation or individual cannot satisfy the public purpose doctrine in light of Ark. Const. art. 12, § 5, as interpreted by our court. See Ark. Op. Att'y Gen. 2005-205 (discussing the cases relative to art. 12, § 5.) With regard to the computer upgrades at issue, therefore, assuming the computer is privately owned, then in my opinion the above observations concerning the accomplishment of a public purpose must be understood to apply in the context of a valid contractual arrangement supporting the use of city funds for this expense.
Your first question's reference to "personal use" of the computer also prompts me to note, as stated by one of my predecessors, the following regarding the public purpose test:
A primary factor in determining whether public funds are being used impermissibly appears to be whether those who contributed tax money received the intended benefit therefrom, or whether, by contrast, the benefit was received by a private individual or entity. [Citing Chandler v. Board of Trustees, supra.] A determination of the question of who is receiving the primary benefit of the property will turn upon a consideration of all of the relevant facts . . . .
Op. Att'y Gen. 1998-191.
It has been further observed that a so-called "incidental private benefit" will not automatically invalidate an expenditure of public funds. See Ark. Op. Att'y Gen. 2004-319 (stating that "[a]n authorized use for a public purpose is not, however, invalid even though it involves an incidental private benefit," quoting Ark. Op. Att'y Gen. No.1993-343 and citing 64 C.J.S. Municipal Corporations § 1725 (1950). See also Ark. Op. Att'y Gen. 2000-243 (citing League of Women Voters of California v. Countywide Criminal Justice Coordination Committee, 203 Cal.App.3d 529, 554 (1988) ("So long as a public interest is served, there is no unlawful expenditure of public funds even though there may be incidental benefits to private persons.")). The question is whether the expenditure is for a "primarily public purpose" or "directly benefit[s] those who were taxed to pay for the expenditure." Op. Att'y Gen. 2005-102 (citing Op. 2004-319 and Chandler, supra.)
Only a finder of fact acquainted with all of the circumstances attending the "personal use" of the computer would be situated to determining whether the use of city funds for the upgrades fulfills a public purpose and whether any personal benefit is incidental.
In response to your second question, and in conclusion, therefore, I believe it is clear from the foregoing discussion that a donation of the computer to the city before the upgrades have been made could make a difference as long as the public purpose test is met. This is particularly true if the alternative scenario (donation after upgrades are made) involves no contractual agreement that would support expending city funds to improve the private property.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,