The Honorable David Dunn State Representative Post Office Box 208 Forrest City, Arkansas 72336-0208
Dear Representative Dunn:
I am writing in response to your request for an opinion on the following question:
 Is it permissible to use taxpayer funds to pay for tickets to the governor's ball for the mayor and select aldermen to attend, under the pretense of `networking' for the benefit of the city? The funds used were city funds, not AP funds.
RESPONSE
In my opinion, the answer to this question may ultimately turn on the particular surrounding facts. Although you have provided no specific information concerning the "governor's ball," it is my understanding that the most recent Governor's inaugural ball was administered by the Arkansas Democratic Party, and that those purchasing tickets were thereby making a contribution to such Party. A city in my opinion generally may not contribute public funds to a political party.Cf. Op. Att'y Gen. 2004-294 (opining that a contribution of public funds to a political campaign is "simply impermissible.") Accordingly, if city funds were used to purchase tickets to the most recent governor's ball, the answer to your question is "no," in my opinion. The use of city funds for that purpose would be impermissible.
If there was no such contribution to a political party under the particular facts, then in my opinion the answer depends upon whether the expenditure was for a proper public or municipal purpose under A.C.A. § 14-58-303 (Supp. 2007), the common *Page 2 
law "public purpose doctrine," and Arkansas Constitution Article 12, Section 5.[1] Your tendentious use of the term "pretense" suggests that this question must be answered in the negative as regards "networking" for the city. In my opinion, however, the issue is ultimately one of fact. Because only a finder of fact acquainted with all the pertinent circumstances can resolve the issue, I am unable to opine definitively in response to your question. I can, however, provide my opinion as to the principal elements of the legal analysis to employ in addressing the matter.
Arkansas Code Annotated § 14-58-303(a) (Supp. 2007) gives the mayor the authority to make purchases of "all . . . things requisite for public purposes" and requires that these things be necessary to carry out any work or undertaking of a "public nature." This authorization is consistent in all respects with the common law "public purpose" doctrine, which restricts public funds to public purposes. See Chandlerv. Board of Trustees, 236 Ark. 256, 365 S.W.2d 447 (1963). It also comports with the constitutional proscription against the appropriation of city funds "for . . . any corporation, association, institution or individual." Ark. Const. art. 12, § 5.
A primary consideration in "public funds" cases appears to be whether those who contributed the tax money at issue received the intended benefit therefrom or whether, by contrast, the benefit was received by a private individual or entity. In Chandler, supra, a taxpayer challenged the use of tax funds for the purpose of paying retirement benefits to employees of the Arkansas Education Association, which was a private organization. The court concluded that even though these employees worked primarily in jobs that benefited the public, the use of tax funds to pay their retirement benefits did not benefit the public primarily, but rather, primarily benefited the employees privately, and was therefore unlawful. In so holding, the court gave a concise statement of the law applicable to the issue of the use of public funds for a private purpose: *Page 3 
 No principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose. A century ago the basic doctrine was simply stated in the leading case of Brodhead v. City of Milwaukee, 19 Wis. 624: "The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute."
236 Ark. at 258, quoting Brodhead v. City of Milwaukee, 19 Wis. 624.See also Clark v. State, 308 Ark. 84, 824 S.W.2d 345 (1992) (Brill, J., concurring); Brewer v. Hawkins, 241 Ark. 460, 408 S.W.2d 492 (1966);Samples v. Grady, 207 Ark. 724, 182 S.W.2d 875 (1944).
Generally, municipal officials are granted wide discretion in determining whether the taxpaying public directly benefits from the expenditure of public funds such that the expenditure satisfies the public purpose doctrine. It has been stated that:
 The court will give weight to a legislative determination of what is a municipal purpose. It has been laid down as a general rule that the question of whether the performance of an act or the accomplishment of a specific purpose constitutes a "public purpose" for which municipal funds may be lawfully disbursed rests in the judgment of the municipal authorities, and the courts will not assume to substitute their judgment for that of the authorities unless the latter's exercise of judgment or discretion is shown to have been unquestionably abused.
64A C.J.S. Municipal Corporations § 1573(b), at 99 (footnotes omitted).Accord Turner v. Woodruff, 286 Ark. 66, 689 S.W.2d 527 (1985). *Page 4 
It has been further observed that a so-called "incidental private benefit" will not automatically invalidate an expenditure of public funds. See Ark. Op. Att'y Gen. 2004-319 (stating that "[a]n authorized use for a public purpose is not, however, invalid even though it involves an incidental private benefit," quoting Ark. Op. Att'y Gen. No.1993-343 and citing 64 C.J.S. Municipal Corporations § 1725 (1950).See also Ark. Op. Att'y Gen. 2000-243 (citing League of Women Voters ofCalifornia v. Countywide Criminal Justice Coordination Committee, 203 Cal.App.3d 529, 554 (1988) ("So long as a public interest is served, there is no unlawful expenditure of public funds even though there may be incidental benefits to private persons.")). The question is whether the expenditure is for a "primarily public purpose" or "directly benefit[s] those who were taxed to pay for the expenditure." Op. Att'y Gen. 2005-102 (citing Op. 2004-319 and Chandler, supra.)
My predecessors have had occasion to address various municipal expenditures over the years and have noted that the resolution of particular questions in this regard will turn upon the facts of each case and must necessarily be decided upon a case-by-case basis. Ark. Op. Att'y Gen. Nos. 94-397 and 92-179. Several previous Attorney General opinions make some general conclusions about the constitutionality of various expenditures. See, e.g., Ark. Op. Att'y Gen. 2001-364 (regional airport authority's use of tax proceeds and other public funds to pay for dinner for certain individuals is, at best, questionable under the law); Ark. Op. Att'y Gen. Nos. 91-410 and 91-411 (city, county or school district expenditures for birthday or Christmas parties for employees, traveling expenses of public officials' spouses, and flowers, gifts and cards for certain persons likely violate the public purpose doctrine); Ark. Op. Att'y Gen. 1994-317 (employee Christmas dinner, employee picnic, employee Christmas gifts, flowers for employees and others, and donation to nonprofit organizations are likely prohibited).
The conclusion that public funds generally may not be used to pay for dinners or parties for public officers or employees follows from the fact that such expenditures seem prima facie to primarily benefit those individuals, rather than the public. See again Op. Att'y Gen. 2001-364,supra. With regard to your particular question concerning the governor's ball, the issue may be framed as whether "`networking' for the benefit of the city" evidences a primary benefit to the public sufficient to satisfy the public purpose test. I note that your tendentious use of the term "pretense" suggests that this question must be answered in the negative. In my opinion, however, the issue is ultimately one of fact, requiring *Page 5 
consideration of all the surrounding circumstances. I lack both the resources and the authority to undertake such an analysis.
As for any possible ethical ramifications relating to this use of public funds, A.C.A. § 21-8-304(a) (Supp. 2007) provides that "[n]o public official or state employee shall use or attempt to use his official position to secure special privileges or exemption for himself or herself . . . that is not available to others except as may be otherwise provided by law." You may wish to consider seeking the review of the Arkansas Ethics Commission in this regard. Arkansas Code Annotated § 7-6-218 (Supp. 2007) charges the Ethics Commission with the authority to investigate all allegations of ethical impropriety. Seealso A.C.A. § 21-8-303(a)(2) (Repl. 2004). The Ethics Commission is further authorized to issue advisory opinions upon request regarding ethical matters. A.C.A. § 7-6-217(g)(2) (Supp. 2007).
While I am unable to resolve the issue you have posed due to its factual nature, the foregoing will hopefully be of assistance in guiding the legal analysis.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] Your statement regarding "AP funds" refers to tax funds credited to the city's "advertising and promotion fund." A.C.A. §26-75-606(a)(1)(A) (Supp. 2007). Such funds must be used for, interalia, "[a]dvertising and promoting of the city and its environs."Id. at (a)(1)(A)(i). Your reference to the fact that AP funds were not used to purchase the tickets to the governor's ball for the mayor and aldermen might suggest that had such funds been used, the permissibility of such use would not be in question. It should be recognized, however, that any use of public funds must meet the statutory and constitutionality requirements discussed infra.